**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-CV-2142-NYW

**CRUSOE ENERGY SYSTEMS, LLC,**

**Plaintiff,**

**v.**

**ALKANE MIDSTREAM, LLC,**

**Defendant.**

_____

**REPORTER'S TRANSCRIPT
(Status Conference)**

_____

Proceedings before the HONORABLE NINA Y. WANG, Judge, United States District Court, for the District of Colorado, commencing at 10:05 a.m. on the 31st day of August, 2022, Alfred A. Arraj United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
BRETT C. GOVETT and TAYLOR A. SHIELDS, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201

STEPHANIE NICOLE DEBROW and DANIEL S. SHUMINER, Norton Rose Fulbright US LLP, 98 San Jacinto Boulevard, Suite 1100, Austin, TX 78756

**FOR THE DEFENDANT:**
RYAN MATTHEW SUGDEN and JOHN SCHROEDER, Stinson LLP, 1144 Fifteenth Street, Suite 2400, Denver, CO 80202

1                          **AUGUST 31, 2022**

2            (Proceedings commence at 10:05 a.m.)

3            THE COURT:  Good morning.  We are on the record in

4    22-cv-2142-NYW, Crusoe Energy Systems, LLC, v. Alkane

5    Midstream, LLC.

6            Could I have appearances of counsel.

7            MR. GOVETT:  Yes, good morning, Your Honor.  This

8    is Brett Govett.  And with me this morning on the line is

9    Stephanie DeBrow, Taylor Shields, and Daniel Shuminer.  We

10   are from the Norton Rose Fulbright law firm.  And we also

11   have two of our clients on the line, Jamie Seeley is our

12   general counsel, and Kyle Zeller, he is our in-house

13   counsel.  Thank you for hearing us.

14           THE COURT:  Good morning, counsel.

15           MR. SUGDEN:  Good morning, Your Honor, Ryan Sugden

16   and John Schroeder, of Stinson, LLP.

17           THE COURT:  Good morning, counsel.

18           All right.  We are here for telephonic status

19   conference with respect to this case.  This is a patent

20   infringement case in which the plaintiff, Crusoe Energy

21   Systems, seeks a temporary restraining order, as well as a

22   preliminary injunction in this case.

23           Given the exigent circumstances that the plaintiff

24   raises, this Court entered an order on August 29, 2022,

25   which is Docket Entry No. 20, asking the parties to meet

1    and confer with respect to a number of issues.

2         Those issues that the Court directed the parties to

3    be prepared to discuss at this conference was, one, the

4    date of anticipated deployment of the accused product

5    and/or services.  Two, a briefing and hearing schedule for

6    the Motion for Temporary Restraining Order and Preliminary

7    Injunction.  Three, whether the parties anticipate any

8    need for claim construction in conjunction with such

9    preliminary proceedings.  And, four, when the parties were

10   available for a non-adversarial technology tutorial in

11   advance of any hearing on the Motion for Temporary

12   Restraining Order and Preliminary Injunction.

13        So this morning I believe we received a submission,

14   which is Docket Entry No. 22; a notice of the parties'

15   proposals concerning a briefing schedule and hearing

16   schedule for Crusoe's Motion for Temporary Restraining

17   Order and Preliminary Injunction.

18        So let me begin by saying thank you for submitting

19   that.  I appreciate that, and I appreciate that you have

20   met and conferred.  There are some is disputes with

21   respect to the timing that you all have asked for, but let

22   me ask a preliminary question.  You all have agreed that

23   Alkane's Response to Crusoe's Motion for Temporary

24   Restraining Order would be September 7, 2022, so we will

25   enter that date.

1        It is not clear to me, however, that the parties

2   are seeking a separate hearing or determination on the

3   Temporary Restraining Order or whether or not that will

4   come in conjunction with the adjudication of the Motion

5   for Preliminary Injunction.

6        So if plaintiff's counsel could first address that,

7   and then defense counsel, I would appreciate that.

8        MR. GOVETT:  Yes, Your Honor.  This is Brett Govett

9   for Crusoe.  We were willing to do whatever the Court had

10  in mind.  If the Court wanted to decide the issues on the

11  papers, then, you know, obviously that would be fine with

12  us.  If the Court wanted to have a hearing, either

13  telephonically, by video conference, or in person, that

14  would be fine with us.  We thought this would be an

15  opportunity to take that up with the Court.

16       THE COURT:  All right.  So you are looking for a

17  separate determination on the TRO versus the preliminary

18  injunction, am I hearing that correct?

19       MR. GOVETT:  Yes, Your Honor.  Yes.

20       THE COURT:  Okay.

21       MR. SUGDEN:  And, Your Honor, this is Ryan Sugden

22  for Alkane.  Our understanding was also that plaintiff was

23  seeking a separate determination on the TRO.  We had not

24  discussed with plaintiff's counsel whether there would be

25  a separate hearing for that, so we haven't had a chance

1    yet to take a position on that.

2         THE COURT:  Okay.  So, that being said, the

3    agreed-upon deadline is September 7.  And then any replies

4    would ordinarily be due no later than September 21st.

5    Given the fact that it is a TRO, we should consider

6    expediting that.  And so let's see --

7         MR. GOVETT:  We can have our Reply done much

8    earlier than that, Your Honor, say the 14th.

9         THE COURT:  All right.  So why don't we have any

10   Reply with respect to the TRO due no later than September

11   14th.  I would be inclined, counsel, then, to take a look

12   at the briefing as it comes in.  I've obviously read the

13   TRO and looked at some of the underlying exhibits.

14        I can't say that I am completely up to speed, but

15   let me take a look at the briefing and then make a

16   determination as to whether or not oral argument on the

17   Temporary Restraining Order would be helpful for the

18   Court.  If that is the case, then I will issue an order

19   setting you all for oral argument.  And then if I find

20   that the oral argument would not materially assist the

21   Court's resolution of the TRO, then I can simply decide on

22   the papers.

23        But that raises a second issue that I raised in our

24   minute order, which is a technology tutorial.  So, looking

25   at the claims of the two patents, the 307 patent and the

1    309 patent, it is not clear to me whether or not you all

2    believe that there will be particular claim construction

3    issues.

4         If there aren't claim construction issues that you

5    currently anticipate, then I am not sure that this Court

6    needs a tutorial prior to determining a TRO or preliminary

7    injunction given the way that these claims are written.

8    But I also wanted to raise that issue with respect to,

9    again, a non-adversarial technology tutorial and whether

10   or not you all would be prepared for such tutorial and/or

11   believe it might be helpful for the Court.

12        MR. GOVETT:  I am happy to speak to that, Your

13   Honor, this is Brett Govett.

14        THE COURT:  Go ahead, Mr. Govett.

15        MR. GOVETT:  So we discussed that, Your Honor.  At

16   this point, we dropped a footnote in our papers, which you

17   probably saw, where we do not believe any claim

18   construction is required.  I will let opposing counsel

19   address their position on that, but my understanding is at

20   least not for the TRO.

21        With respect to the tutorial, the technology

22   tutorial, of course it is up to Your Honor, but I believe

23   those are always helpful, and there is a number of

24   different ways, perhaps, that we could go about it.  Of

25   course we could do it in person.  But one way that we have

1   done in other cases is we just submitted a voiced-over

2   PowerPoint.  So in the PowerPoint we go through some

3   slides and we have a little bit voice-over that is tied to

4   the slides, and we found that to be helpful for the court

5   or the technical advisory or what have you that is working

6   on the *Markman* proceedings.

7          And then, of course, we are always happy to come in

8   person.  But we had a question about in person.  Were you

9   just thinking -- I have done it just with counsel, I have

10  done it with, we bring our expert, put the expert on the

11  witness stand, we ask some questions of the expert, then

12  open it up to the Court to ask questions.  That is another

13  alternative.  So it was just dependent on what the Court

14  had in mind for a tutorial.

15         THE COURT:  All right.  Well, let me hear from

16  defense counsel, and then I can give you my thoughts.

17         MR. GOVETT:  Thank you.

18         MR. SCHROEDER:  Hello, Your Honor, this is John

19  Schroeder on behalf of defense counsel.  And our thought

20  right now is that we are not planning on raising claim

21  construction issues, at least in the TRO.  The Preliminary

22  Injunction is a little bit further down the road, in terms

23  of briefing.  And so we're kind of undecided at this exact

24  moment as to whether or not we would raise any claim

25  construction at that point.  Obviously we would have a

1    little more time to develop claim construction positions

2    and defenses that we have.  So that is part of why we are

3    just not completely sure of what we are wanting to do on

4    the preliminary injunction response yet.

5          As far as the technology tutorial, I think our

6    position is that these claims are a fairly high level, and

7    I am not really too sure how much a tutorial would

8    actually assist, but we would, of course, comply with

9    whatever the Court's desire would be regarding that.

10          THE COURT:  Okay.  So my inclination is that the

11    claim construction hearing -- or, I am sorry, the

12    technology tutorial is not so necessary if you all are not

13    making claim construction arguments in conjunction with

14    the TRO.

15          To the extent that there may be claim construction

16    issues raised at the Preliminary Injunction hearing, then

17    I might go back and indicate that a technology tutorial

18    might be helpful.  But in my preliminary analysis of both

19    the claim chart that was attached as Exhibit C to the

20    Declaration of Dr. Hilbert, as well as reading the claims,

21    it doesn't seem like the technology tutorial is as

22    pertinent or helpful as it might be in other cases.

23          So I am always inclined to minimize costs for you

24    all and maximize efficiency, unless I am going to get some

25    sort of positive output for your efforts.  So at this

1   point, what I am inclined to do is just set aside the

2   technology tutorial.

3       If you all want to meet and confer about whether or

4   not a voice-over PowerPoint might be helpful to orient the

5   Court, you are certainly welcome to do so.  I like my

6   technology tutorials to be as non-adversarial as possible.

7   I do not want those to be another opportunity for the

8   parties to argue either infringement and/or invalidity of

9   the claims.

10      And so why don't we wait on the technology tutorial

11  now.  I will see some of these papers as they come in, and

12  then I might re-evaluate to see whether or not a

13  technology tutorial would be helpful.  How does that sound

14  to everybody.

15      MR. GOVETT:  This is Brett Govett.  That sounds

16  great, Your Honor, thank you.

17      MR. SCHROEDER:  And this is John Schroeder.  We

18  would be agreeable to that.

19      THE COURT:  All right.  So then there is a dispute

20  over the deadline for Alkane's Response to the Complaint.

21  Obviously under the Federal Rules of Civil Procedure, the

22  presumptive deadline for filing a response to any

23  complaint is 21 days after service.  This was served on

24  August 22nd, and then that would generally mean that the

25  Response -- well, I am sorry.  You all may not have served

1   it on the 22nd.

2          MS. DEBROW:  Your Honor, this is Stephanie DeBrow.

3   I believe the date of service is August the 25th.

4          THE COURT:  Okay.  So that would mean that the

5   presumptive deadline is the deadline proposed by Crusoe,

6   which is September 15.  Alkane seeks an extension to

7   October 5th, which Crusoe says that it does not oppose, so

8   long as the extension does not delay facts discovery.

9          So that raises the Plaintiff's Motion for Expedited

10  Discovery.  Helpfully, the plaintiff has also attached as

11  Docket Entry No. 12, proposed discovery.  And it seems to

12  me that we could proceed to considering whether or not

13  expedited discovery is appropriate without having to have

14  the Response to the Complaint first.

15         Now, Mr. Schroeder or Mr. Sugden, let me hear from

16  you all, since you all are proposing a Response that is

17  not in line with the Federal Rules of Civil Procedures'

18  presumptive limit.

19         MR. SUGDEN:  Your Honor, this is Ryan Sugden.  So

20  you would like us to address the Response date to the

21  Complaint?

22         THE COURT:  Yes.

23         MR. SUGDEN:  So the date that we proposed is the

24  21-day extension of the typical deadline to answer, which

25  is within the local rules' typical allowance for a

1   stipulated extension by the parties.  We don't believe

2   that by filing the Complaint -- I am sorry, a Response to

3   the Complaint on October 5th, that would delay fact

4   discovery.

5        We do have issues with the schedule of the

6   expedited discovery that has been requested, but we are

7   not taking the position that it must wait until after we

8   would answer or file a Motion in Response to the

9   Complaint.

10       THE COURT:  All right.  So, hearing that,

11  Mr. Govett, any objection to entering that October 5th

12  deadline for the Response of the Complaint, knowing that

13  these issues with the Motion for Expedited Facts Discovery

14  are going to need to be adjudicated by this Court at least

15  in conjunction with some preliminary discovery?

16       MR. GOVETT:  There is no objection.  No objection,

17  Your Honor.  Thank you.

18       THE COURT:  So we will set that deadline for

19  October 5, 2022, for the Response to an Answer or Motion

20  in Response to the Complaint.

21       Now let's turn to the Motion for Expedited

22  Discovery, because my sense is that that is going to

23  influence the deadlines with respect to the completion of

24  fact discovery, any supplemental briefing with respect to

25  the Motion for Preliminary Injunction, the opposition to

1    the Preliminary Injunction, and the Motion for Preliminary

2    Injunction.

3            I will tell you that given the Court's schedule,

4    getting you all in for a preliminary injunction hearing in

5    November or early December is going to be challenging.  As

6    you all probably know, I was just recently confirmed, and

7    as part of that process, received a number of cases from

8    my colleagues, which are set for jury trial on my calendar

9    now all throughout November and early December.

10            So I am a little bit concerned with respect to

11    slating you in for a preliminary injunction hearing, but

12    that will also depend on a couple of things, and one is I

13    would like Mr. Sugden and Mr. Schroeder to address the

14    date of the anticipated deployment of the accused products

15    and/or services, because based on my reading of the

16    Complaint, it wasn't entirely clear to me when these

17    things were going to get deployed which, again, in turn

18    may influence the Court's timing with respect to a number

19    of these issues.

20            And then, two, how long you all anticipate a

21    preliminary injunction hearing lasting; whether you think

22    that it could be completed in one day or you think it will

23    take multiple days for the Court's consideration.

24            MR. SUGDEN:  Thank you, Your Honor, this is Ryan

25    Sugden, and that sounds like a very nice welcoming gift

1    from your colleagues to get a number of jury trials.

2         But with respect to the date of deployment, the

3    understanding that we have from our client is that Alkane

4    will deploy non-bitcoin mining equipment to the site in

5    approximately three weeks.  So that is non-bitcoin mining

6    equipment.

7         Alkane, itself, will not be conducting any bitcoin

8    mining activities, itself.  Third parties may take the

9    electricity that Alkane generates and use it for bitcoin

10   mining, and the equipment for that by the third parties,

11   our understanding, is scheduled to be delivered to the

12   site around November 1st.

13        THE COURT:  Okay.  So we are really talking about

14   three weeks for the first deployment, because at least the

15   way I read these patent claims right now, and I am sure

16   you all will have some different opinions on this, I am

17   not sure that these claims are narrow enough to limit the

18   use of these flare mitigation systems to just bitcoin

19   mining, despite the fact that that may have been the

20   plaintiff's anticipated use.

21        So, Mr. Govett, do you want to address that first,

22   and then, of course, I will hear from defense counsel, as

23   well.

24        MR. GOVETT:  Yes, Your Honor, the claims are

25   targeted towards distributed computing, so you are right

1   on point with that.  Obviously it can be any sort of

2   intensive computing, as you saw on the specification for

3   the patent.  So we agree they are not limited to bitcoin

4   mining.

5        And I would just add that the remarks from defense

6   counsel make me all the more motivated to seek some

7   expedited discovery to find out actually what is going on.

8   And congratulations on your commission date, I think that

9   was July 22nd, and it was also the date, as you saw in our

10   Complaint, that we had the meeting that led to the filing

11   of the Complaint that is outlined in our papers.  So we

12   would want to go forward as quickly as possible, of

13   course.

14        And then you raised a point about the length of the

15   preliminary injunction hearing.  We believe a full day

16   should suffice, Your Honor.  I am not sure whether that is

17   6-and-a-half hours or 5-and-a-half hours or what you

18   typically do in court.  But if we could get, you know,

19   somewhere about 6 to -- 6 or so hours divided between the

20   sides, we should be, barring something unforeseen, we

21   should be fine with that, in terms of the length of time

22   for a preliminary injunction hearing, particularly given

23   how up to speed you are.

24        THE COURT:  All right.  Mr. Sugden or

25   Mr. Schroeder, do you want to address the timing for the

1    preliminary injunction hearing?

2         MR. SCHROEDER:  Your Honor, this is John Schroeder.

3    I want to clarify one point that Ryan made.  And then I

4    will actually hand over the answer to the question you

5    just asked back to Ryan, actually.

6         But the equipment that is being delivered on site

7    on November 3rd, it is not only not related to bitcoin

8    mining, it is not related to computing.  It is my

9    understanding it is related to actually using the --

10   creating natural gas products.  So it is not actually

11   related to the claims in any way, at least in our opinion.

12        THE COURT:  Okay.  Well, that obviously goes back

13   to the discovery issue.  So in three weeks there is

14   equipment going to be delivered.  Is it also going to be

15   deploying?

16        MR. SCHROEDER:  I believe that the equipment that

17   is being delivered may start being deployed.  But, as I

18   said, that equipment in three weeks is actually processing

19   the gas into salable products, not into power for

20   operating computer equipment.  That would potentially be

21   what gets delivered, though, on November 1st, is my

22   understanding, is potentially computer operating type

23   equipment.

24        THE COURT:  Okay.  All right.  So that is helpful.

25        Mr. Sugden, what did you want to tell me about the

1    length of time for any preliminary injunction hearing?

2         MR. SUGDEN:  We had discussed this internally prior

3    to this call, Your Honor.  Again, this is Ryan Sugden.  We

4    thought that a two-day hearing would be appropriate and

5    give the parties adequate time for the Court to consider

6    the claims.

7         THE COURT:  All right.  So there is a -- I won't

8    call it a dispute, but a disagreement with respect to

9    whether or not we want one or two days.  So it sounds to

10   me like it is probably the safest that I find a two-day

11   block, lest we have any issues.

12        I will tell you that unless the numbers with

13   respect to COVID-19 go up or somehow change, my

14   inclination is to have you in person for a preliminary

15   injunction hearing.  I just find that is a little bit

16   easier to understand and be engaged, for both the Court

17   and the parties, to be here in the courtroom.

18        You all are welcome, however, if there is any

19   discomfort, to seek leave for one or more people to appear

20   remotely.  I also, depending on the numbers, may request

21   that all people wear masks, except the testifying witness,

22   so that I can understand the witness.

23        It is also not entirely clear to me, other than

24   expert witnesses, who you might anticipate testifying at

25   that time.  So we can deal with all of those issues

1    depending on what the COVID-19 protocols might be from our

2    Chief Judge, and then also what the numbers might be

3    leading up to any such hearing.

4         MR. GOVETT:  Understood, Your Honor.  Thank you.

5         THE COURT:  So the next thing that I think would be

6    helpful for us to decide, not to sort of kick the can down

7    the road, but it is always helpful for me to understand

8    what the disputes are and to resolve those disputes with

9    respect to the discovery that is being sought.

10        So let me ask Mr. Sugden and Mr. Schroeder, you

11   have indicated that you believe that the breadth of the

12   topics may be too broad.  Are there any topics or written

13   discovery that you all agree upon?  So my second question

14   was whether or not there are areas or written discovery

15   requests, as they stand now, that the parties do not

16   dispute?

17        MR. SUGDEN:  Your Honor, this is Ryan Sugden.  We

18   have not specifically conferred with Mr. Govett or his

19   team on specific discovery requests, and we would be happy

20   for do so.  Frankly, the objection to the breadth is in

21   conjunction with the schedule.  So, just to provide some

22   context for our objection, plaintiff is seeking to use

23   every discovery tool in the book; interrogatories,

24   requests for production, requests for inspection, requests

25   for admission, three depositions, as well as requesting

1   early Rule 26 disclosures, and they are looking for all of

2   that to happen in a matter of days.  Seven days' response

3   time is requested for the written discovery, and then a

4   very short period of time to complete fact discovery and

5   depositions, as well as the request for inspection.  So

6   it's the compressed nature of the request.

7        The objection to breadth is primarily on the number

8   of depositions sought.  Plaintiff seeks thee depositions;

9   two fact and one corporate representative.  We think that

10  should be limited to just one corporate representative.

11       The topics are fairly wide ranging, and the Rule

12  30(b)(6) notice that we received, including our client's

13  creation and development of an entire flare gas

14  technology, pretty broad stuff.  I think it would be

15  appropriate for us to confer with plaintiff's counsel on

16  any objections to specific requests before we take up the

17  Court's time.  But our objection is to the number of

18  depositions sought, as well as the early Rule 26

19  disclosures.  Given the amount of written discovery that

20  is already being sought, we don't think it is necessary or

21  appropriate.

22       We have objections on the timeline and the

23  schedule.  Your Honor hasn't requested for us to speak to

24  or discuss that yet, but I am happy to go into it.  As the

25  schedules -- the competing schedules demonstrate, we are

1    seeking slightly more time; another month to complete fact

2    discovery, in part given the amount that has been already

3    propounded.  In part, because it is a Motion to Restrict,

4    we have not yet shared any discovery with our client yet.

5    And, in part, because the schedule that plaintiff's

6    counsel has proposed does not appear to allow any time

7    for -- does not allow adequate time, I should say, for

8    defendants to conduct its own discovery.

9        THE COURT:  All right.  So a couple of things.  For

10   better or for worse, you have a presiding judge who was

11   both a patent litigator and a magistrate judge.  So that

12   means that I would be inclined not to refer this to a

13   colleague for discovery disputes, but to resolve them

14   myself.

15       So what do you all think about a hearing on

16   September 8th?  We can do it telephonically so that it is

17   easier for you all.  But on the 8th, we will have the

18   Response to the Motion for Temporary Restraining Order,

19   and then also we will have an opportunity to talk about

20   specific objections or specific areas that the defendant

21   is willing to provide expedited discovery on.  And then I

22   think I would be in a better place to have an opportunity

23   to actually think thoughtfully about what the discovery

24   deadlines for those might be.

25       MR. GOVETT:  This is Brett Govett, Your Honor.

1    That would be great.  And if they want to send some

2    discovery over to us, we can take it all up at once, just

3    to move things along.

4         THE COURT:  Okay.

5         MR. GOVETT:  If we could just avoid the lunch hour,

6    it would be very much appreciated, but we will make

7    ourselves available whenever the Court would like.

8         THE COURT:  All right.  Mr. Schroeder or

9    Mr. Sugden, September 8th?

10         MR. SUGDEN:  We are available on September 8th.  I

11    have an existing obligation in the morning, but it is not

12    something that would get in the way of this Court's

13    schedule.

14         THE COURT:  Okay.  So what about 1 o'clock Mountain

15    Time?

16         MR. GOVETT:  That is perfect, Your Honor.  This is

17    Brett Govett.

18         MR. SUGDEN:  This is Ryan Sugden, that works for

19    me.

20         THE COURT:  And then we will do it telephonically.

21    So what I would like you all to do is meet and confer

22    about the written discovery requests that were made by the

23    plaintiff, which are Docket Entry No. 12.

24         And then if you could take a look at my practice

25    standards, which I believe are up right now, there should

1   be some instructions with respect to discovery disputes

2   that are remnants from my days as a magistrate judge.  And

3   I am going to pull that up, because we this been in the

4   process of putting up practice standards.

5        So Instruction 3 of my practice standards, you will

6   see Discovery Dispute Procedures.  And so if you all can

7   take a look at that and provide a chart to me no later

8   than 9:00 a.m. on September 7th.  I am trying to give you

9   all a little extra time so I don't completely ruin your

10  Labor Day holidays, but I do need some time to at least

11  have an opportunity to review them before I start working

12  with you on the 8th.

13       MR. GOVETT:  That is great, Your Honor.  We are

14  familiar with this.

15       THE COURT:  You can submit those directly to

16  chambers, that chart.  And then if I need to, then I can

17  docket it in conjunction with the hearing.  But oftentimes

18  as a magistrate judge we did this somewhat informally.  It

19  is a little bit different here because there is that

20  Motion for Expedited Discovery.

21       I will leave it up to defendant if they also want

22  to file a written Response to that Motion for Expedited

23  Discovery in addition to the chart.  If you do want to

24  file a Response to that Motion for Expedited Discovery,

25  that Response would be due no later, again, at 9 o'clock

1    Mountain Time on September 7th.

2        MR. GOVETT:  Your Honor, Brett Govett.  With

3    respect to the chart, do we send it to Emily?  I am trying

4    to find the proper email address.

5        THE COURT:  You can send it to my chambers, which

6    is wang_chambers@cod.uscourts.gov.

7        MR. GOVETT:  Okay.  Thank you.

8        THE COURT:  So then once we have that hearing on

9    discovery and I can understand what the breadth of the

10   discovery might be, then we can also work on what the

11   proposals are with respect to the deadlines.  And I would

12   hope that if we have enough time on Wednesday, we would

13   move from resolving discovery disputes to going toward

14   setting those deadlines.

15       Let me be very clear, however, I am very focused on

16   the discovery being what is necessary with respect to what

17   the elements of the preliminary injunction to be.  And

18   that means, for better or for worse, right now I'm mostly

19   concerned with respect to alleged infringement as opposed

20   to alleged invalidity.  That is because the relief that is

21   being sought is primary based on infringement, although I

22   know that you can't infringe an invalid claim.

23       But that is what I'm really thinking about

24   primarily, in terms of trying to get you all a resolution

25   to the TRO and/or the preliminary injunction.  Does that

1    make sense to everybody?

2          MR. GOVETT:  Yes, Your Honor.

3          MR. SUGDEN:  Yes, it does.

4          THE COURT:  All right.  So then let's move to the

5    Motion to Restrict, because it sounds like there may be

6    some issues with respect to the Motion to Restrict that

7    defendant might want to raise in terms of trying to

8    adequately confer with their own client with respect to

9    the allegations and the procedures here.

10         MR. SUGDEN:  Yes, thank you, Your Honor, this is

11    Ryan Sugden.  The concerns that we have with the Motion to

12    Restrict is that the plaintiff sought a Level 1

13    Restriction, which as the Court is well aware, under Rule

14    7.2(b) of the Local Rules, limits access to the parties

15    and Court, but plaintiff's motion sought to limit access

16    to outside counsel only.

17        We have respected that motion and have not yet

18    shared any restricted documents with our client; that

19    includes the declarations, that includes the contract at

20    issue, and that also includes the discovery requests.  And

21    so we don't believe that there is any support in the Local

22    Rules for a restriction to outside counsel only, nor in

23    the contract provision that plaintiff has indicated

24    require them to file these as "restricted."

25        So the second issue that we also have in addition

1    to the AEO request is that we don't think that full

2    restriction of the documents is appropriate.  We think a

3    more limited approach, like redaction, is appropriate.  I

4    will let Mr. Govett speak for himself.  I don't believe

5    that plaintiff has any issue with redactions, at least

6    when we conferred they did not appear to.

7          So our proposal would be that the parties,

8    including client representatives and inside counsel, have

9    access to all Level 1 documents, and that plaintiff make

10   targeted redactions to clients or customer names and well

11   or pad sites, and that the remainder of the documents be

12   made public.

13         THE COURT:  All right.  Mr. Govett?

14         MR. GOVETT:  Yes, Your Honor.  They need to -- we

15   are in agreement that they need to get the information to

16   their clients.  They are in a competitive situation to us,

17   so we would ask that the pricing information not go to

18   their clients or to the public.

19         As you saw, we have a very strict confidentiality

20   provision.  We just don't want a counterparty to say that

21   we were in breach of that confidentiality provision.  And

22   that was our reasoning for filing things and requesting

23   that they maintain outside counsel, as only I am sure

24   everyone on the call can understand.

25         So if the Court would -- you know, is inclined to

 1    enter some relief or some order with respect to that so

 2    that we won't be found to be in violation of that

 3    provision, that would be great.  We don't want anybody

 4    saying that we did anything other than what we were

 5    supposed to do.  But, at the same time, we can't let that

 6    get in the way of handling this case, and we realize the

 7    practicalities of that.

 8            THE COURT:  Sure.  So this is what I am inclined to

 9    do.  First of all, I think of "restriction" and "AEO"

10    status as two very different things.  So with respect to

11    the Motion to Restrict, what I am focused on in any Motion

12    to Restrict under our Local Rule is what we are

13    restricting from public access.  And that means that even

14    if something is limited to the parties and the Court under

15    Level 1, that doesn't necessarily mean that it is

16    attorneys' eyes only.

17            And usually what happens with respect to attorneys'

18    eyes only, is there is a different standard and it is

19    implemented through a protective order.  The protective

20    order may protect disclosure of certain documents, even if

21    they are, in fact, never filed with the Court.  So I just

22    want to make sure that you all are thinking about those

23    two concepts separately, because this Court does think of

24    those two concepts separately.

25            The second thing is that I take seriously the

1    object of our judiciary to be as open as possible.  I

2    think that the people, not only the parties, but the

3    general public, deserve to understand why our courts are

4    making decisions and upon what facts and information they

5    are making those decisions.

6         That means that I am -- I wouldn't say hostile to

7    restricting the record, but I will say that I do look

8    critically at any motions to restrict, and you all should

9    know moving forward that even if you all were to agree to

10   restrict information off the public record, the Court

11   might not agree.  Again, going back to that fundamental

12   principle of an open judiciary for the parties and the

13   public.

14        So what I would like you all to do is take that

15   information, meet and confer over the next day or so and,

16   again, no later than 9:00 a.m. this Friday, I would like

17   to understand, through a Response to the Motion to

18   Restrict, and then see if you all can figure out what kind

19   of protective order you are or are not willing to enter to

20   protect certain information.

21        That being said, I am putting the onus back on you

22   all to look at these documents and talk about what

23   necessary redactions there might be.  And then to the

24   extent that there is still a dispute once you all have an

25   opportunity to meet and confer, to raise that dispute to

1   this Court, either through the Response to the Motion to

2   Restrict, if you all cannot agree to what will be on the

3   public record, and then what will be also docketed as

4   redacted for the public to see.

5        And then, two, if that is somehow different than

6   what can be shared with clients, then we can take that up

7   on a motion for protective order, as well.

8        Typically, in these kinds of cases, the parties

9   enter a stipulated protective order that allows for the

10  designation of certain documents to be confidential and

11  then a second tier to be confidential, attorneys' eyes

12  only.  Again, this District has standards with respect to

13  what kind of information can be identified as "attorneys'

14  eyes only."

15       You all have touched on one of the factors, which

16  is whether or not there is a competitive nature between

17  the parties.  But I know that I have experienced counsel

18  on both sides, so I am going to leave that up to you all

19  in the first instance.  How does that sound?

20       MR. GOVETT:  Your Honor, this Brett Govett for

21  Crusoe.  It sounds great.  I just have one clarification.

22  We just want to make sure that the counterparties on our

23  agreement, there is no room for them to complain.  We hear

24  you loud and clear, and we are completely in agreement

25  that the public needs the proper access and, of course,

1    our opponent needs proper access.  We just don't want them

2    to complain and say, well, you know, you agreed or didn't

3    oppose it or something like that when, in fact, that is

4    what the rules require.

5         THE COURT:  And I am sensitive to that.  The Court

6    can always enter an order.  And what I am anticipating to

7    do is entering some sort of order with respect to

8    disclosure.  What I want you all to meet and confer about

9    is what is really necessary for that disclosure.  If I

10   need to enter an order directing you all to produce that

11   so that the defendant can adequately prepare for the

12   response to the TRO and/or the preliminary injunction, I

13   am happy to do so.

14        That is why I am having you do it this week, so

15   that we can get that in place, and hopefully start the

16   production process by Friday, so that, again, going into

17   the weekend, that you all have the opportunity to share

18   what needs to be shared.  You all can also do that through

19   a letter agreement, if you want to start that process

20   sooner, rather than later.  But, again, what I am trying

21   to do is to do this in the most expedited and efficient

22   manner that I can.

23        MR. GOVETT:  Appreciate that.  We will get right on

24   it, Your Honor.  I think we are, if not in total

25   agreement, we are very close to agreement on these issues.

1           THE COURT:  All right.  So that is what is on my

2    list right now.  I am going to defer setting these further

3    deadlines until we talk again on September 8th.

4           Anything else, counsel, on your parts that would be

5    helpful to discuss today?

6           MR. GOVETT:  This is Brett Govett for the

7    plaintiff.  Ms. DeBrow, is there anything else?  She

8    always keeps everything straight.

9           MS. DEBROW:  I think we have picked through all of

10   the issues.  And, Your Honor, we appreciate your guidance

11   in how to approach these and getting us on the calendar to

12   discuss discovery more next week.

13          MR. GOVETT:  Yes, thank you, Your Honor.

14          THE COURT:  Anything on behalf of defendants?

15          MR. SUGDEN:  This is Ryan Sugden.  I don't think

16   that we do.  Thank you very much for your time, Your

17   Honor.

18          THE COURT:  All right.  So if it is helpful and you

19   need a transcript of this proceeding, just make sure that

20   you are getting in touch with my courtroom court reporter

21   and/or courtroom deputy.  They work closely together.

22   Otherwise, I will look forward to your submissions next

23   week and hearing from you next week.

24          Thank you, we will be in recess.

25          (Proceedings conclude at 10:49 a.m.)

# R E P O R T E R ' S   C E R T I F I C A T E

I, Darlene M. Martinez, Official Certified Shorthand Reporter for the United States District Court, District of Colorado, do hereby certify that the foregoing is a true and accurate transcript of the proceedings had as taken stenographically by me at the time and place aforementioned.

Dated this <u>7th</u> day of <u>September</u>, 2022.

_____

s/Darlene M. Martinez

RMR, CRR