# Exhibit T

**PLAINTIFF CRUSOE ENERGY SYSTEMS LLC'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

*REBUTTAL EXPERT DECLARATION OF DR. L. BRUN HILBERT, PHD, P.E.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION**

| | | |
|---|---|---|
| CRUSOE ENERGY SYSTEMS LLC, | § § | |
| Plaintiff, | § § | Civil Action No. 1:22-cv-2142-NYW |
| v. | § § | |
| ALKANE MIDSTREAM LLC, | § § | Honorable Judge Nina Y. Wang |
| Defendant. | § | |

**REBUTTAL EXPERT DECLARATION OF DR. L. BRUN HILBERT, PH.D., P.E.**

1

**I.     INTRODUCTION**

1.     I make this declaration based upon my own personal knowledge and, if called upon to testify, would testify competently to the matters contained herein.

2.     I have been retained by Norton Rose Fulbright US LLP to serve as a technical expert in this matter on behalf of Crusoe Energy Systems LLC ("Crusoe"). I have been asked to provide an independent analysis regarding whether U.S. Patent Nos. 10,862,307 (the "'307 Patent"), 10,862,309 (the "'309 Patent"), and 11,437,821 (the "'821 Patent") (collectively, "the Asserted Patents") are infringed by any of the products and systems made, used, sold, or offered for sale by Alkane Midstream LLC ("Alkane").

3.     This declaration is a statement of my rebuttal opinions in view of Alkane's Response to Crusoe's Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and exhibits thereto (ECF 35-38). I have reviewed and considered Alkane's Response, as well exhibits (including declarations) submitted in support thereof.

4.     The opinions expressed herein are a supplement to the opinions expressed in my declaration filed in support of Crusoe's Emergency Motion for Temporary Restraining Order and Preliminary Injunction and the supplement thereto, and I hereby incorporate by reference the opinions expressed in those declarations (ECF 9-15 and ECF 28-2).

5.     The opinions expressed herein are made to a reasonable degree of engineering certainty and are based on my many years of professional experience in the relevant fields of the Asserted Patents, as well as my review of the information currently available to me concerning the accused systems. Should additional information, arguments, or evidence become available to me, I reserve all rights to supplement and/or amend my opinions to address such information, arguments, or evidence. In particular, my review of Alkane's products and systems has been

limited to publicly available information, and I reserve all rights to supplement and/or amend my opinions based on information made available in the course of discovery.

6. Alkane and its factual declarant Mr. Woods make a number of incorrect statements regarding the opinions in my initial declaration and the Asserted Patents. I will address each in turn.

## II. THE CLAIMED "ELECTRICAL TRANSFORMATION MODULE"

7. To start, Alkane incorrectly states that my infringement opinions concerning the element of the asserted claims requiring "an electrical transformation module" is based on an assertion that "operating multiple generators in parallel creates a higher combined voltage." ECF 35 at 8. That is incorrect.

8. I explained that, "in order to have a single power source to power the distributed computing system," the parallel panel of Alkane's system "receives the separate outputs from those generators, and combines and phase-synchronizes them" *See*, *e.g.*, ECF 9-3 at 9-11. I further explained that combined electrical output from the generators would need to be transformed because the voltage exceeds the operational input voltage of typical distributed computing system components. *See*, *e.g.*, *id.* at 11-13.

9. Typical distributed computing devices are designed for input voltages no higher than about 240 VAC. Accordingly, a transformer would be necessary to step down the output voltage if it is above about 240 VAC—which Alkane contends is 415 VAC—to the about 240 VAC input that is suitable for the distributed computing components.

### III. A PERSON OF ORDINARY SKILL WOULD UNDERSTAND THAT 415 VAC IS "A HIGH VOLTAGE ELECTRICAL OUTPUT"

10. Alkane states that I incorrectly identified the voltage of the electrical output of Alkane's generators as 480 VAC. Alkane asserts instead that its generators are configured to generate an electrical output at 415 VAC.

11. To the extent Alkane intends to assert that the accused systems do not generate a "high-voltage output" because the output is at 415 VAC rather than 480 VAC, I disagree. Based on my years of professional experience in the field, a person of ordinary in the art ("POSA") would understand and consider an electrical output with a voltage above about 240 VAC—the upper threshold of operational input voltages for typical consumer and household devices—to be a "high-voltage electrical output."

12. This is consistent with the specifications of the Asserted Patents, which identify a number of exemplary voltage ranges that would be considered "high-voltage"—all of which are above about 240 VAC—and a single, exemplary voltage range that would be considered "low voltage," which is "from about 208 V to about 240 V." *See e.g.* '307 Patent, 3:20-28, 16:30-36, 18:3-10.

13. Thus, at the time of the invention, a POSA would have understood a "high-voltage electrical output" for distributed computing devices to be an output with a voltage over about 240 VAC.

### IV. CONCLUSION

14. For the reasons explained herein and in previous declarations, it is my opinion that the accused systems include each and every element of claims 1-3 and 14-16 of the '307 Patent, claims 1-3 and 14 of the '309 Patent, and claims 1-3, 5-8, 11, and 15 of the '821 Patent.

15. I declare under penalty of perjury that the foregoing is true and correct. Executed on September 14, 2022.

_____

Dr. Brun Hilbert, Ph.D., P.E.