**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-CV-2142-NYW

**CRUSOE ENERGY SYSTEMS, LLC,**

**Plaintiff,**

**v.**

**ALKANE MIDSTREAM, LLC,**

**Defendant.**

_____
REPORTER'S TRANSCRIPT
(Motions Hearing)
_____

Proceedings before the HONORABLE NINA Y. WANG, Judge, United States District Court, for the District of Colorado, commencing at 1:05 p.m. on the 8th day of September, 2022, Alfred A. Arraj United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF: (Telephonically)**
BRETT C. GOVETT, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201

STEPHANIE NICOLE DEBROW and DANIEL S. SHUMINER, Norton Rose Fulbright US LLP, 98 San Jacinto Boulevard, Suite 1100, Austin, TX 78756

**FOR THE DEFENDANT: (Telephonically)**
RYAN MATTHEW SUGDEN and JOHN SCHROEDER, Stinson LLP, 1144 Fifteenth Street, Suite 2400, Denver, CO 80202

1                       **SEPTEMBER 8, 2022**

2           (Proceedings commence at 1:05 p.m.)

3           THE COURT:  Good afternoon.  We are on the record

4    in 22-cv-2142-NYW, Crusoe Energy Systems, LLC v. Alkane,

5    et al.

6           Could I have appearances of counsel, please.

7           MR. GOVETT:  Your Honor, this is Brett Govett.  And

8    joining me on the phone today is Stephanie DeBrow and

9    Daniel Shuminer, our General Counsel, Jamie Seely, and our

10   Assistant General Counsel, Kyle Zeller.  Ms. DeBrow will

11   be handling the hearing today, and we are ready to

12   proceed.  Thank you.

13          THE COURT:  Thank you.

14          MR. SUGDEN:  Good afternoon, Your Honor, Ryan

15   Sugden and John Schroeder, of Stinson, LLP, on behalf of

16   the defendant.

17          THE COURT:  Good afternoon, counsel.

18          We are here for the telephonic conference that we

19   set the last time we were together with respect to

20   resolving some of the outstanding motions that have been

21   filed in this case.  Specifically I am focused on Docket

22   Entry No. 11, the Motion to Expedite Discovery, and then

23   Docket No. 13, the Motion for Leave to Restrict.

24          So let's begin with Docket No. 13 before we dive

25   into the various discovery disputes in this case which, if

1    I am not mistaken, will allow the Court to resolve Docket

2    Entry No. 11, which is the Motion to Expedite Discovery.

3    Is that counsel's understanding?

4         MR. SUGDEN:  This is Ryan Sugden.  Yes, Your Honor,

5    I believe we can resolve the discovery disputes today,

6    which would then resolve the motions.

7         MS. DEBROW:  Your Honor, this is Ms. DeBrow.  I

8    also agree with that.

9         THE COURT:  Okay.  So let's first look at the

10   Motion to Restrict, because the Motion for Expedited

11   Discovery and then the attendant discovery issues I think

12   will take us a little bit of time to work through.

13        So, as I understand it, based on the various

14   pleadings -- I am sorry, various papers filed in

15   conjunction with the Motion to Restrict, I have reviewed

16   the Response and then the Reply to the Motion to Restrict,

17   those are Docket Entry No. 25 and Docket Entry No. 31.

18        My understanding, first off, is that there is no

19   dispute that the Court can unrestrict Docket Entry No. 12,

20   Docket Entry No. 12-2, and Docket Entry 12-3, which are

21   the discovery requests in the case, and also Docket Entry

22   No. 12-1; is that correct?

23        MS. DEBROW:  Your Honor, I believe that is correct,

24   with one exception.  As we've made clear in our Reply, the

25   confidentiality provision in the agreement between Crusoe

1    and Modiin/Gondola restricts our disclosure of the

2    existence of that agreement and the names of the parties.

3    And Docket Entry 12-1 makes reference to that agreement.

4         And so our view is that based on the

5    confidentiality restriction in the agreement, we can't

6    voluntarily agree to make that document public.  However,

7    as we said in our Reply, we don't oppose Alkane's request

8    for an order from the Court requiring that that document

9    be made publicly available.

10        THE COURT:  All right.  So the Court will order

11   that -- well, let's take it in pieces.  As I understand

12   it, Document No. 8 is the Digital Flare Purchase Agreement

13   that you are concerned with, Ms. DeBrow; is that correct,

14   the underlying agreement?

15        MS. DEBROW:  That is correct, Your Honor.

16        THE COURT:  So, pursuant to Rule 26, I find that

17   the agreement is relevant and proportional to the needs of

18   this case.  So I am going to order under Rule 26 that

19   Docket Entry No. 8 be produced to the other side.

20        Now, Docket Entry No. 12-1, which is the Request

21   for Admissions, refers to that underlying agreement.  I am

22   also going to order that Docket Entry No. 12-1 be publicly

23   available.

24        We do have some issues as to what version of Docket

25   Entry No. 8 will be publicly available.  There have been

1    some proposals, as I have seen, to redact certain

2    information.  So I think we'll next turn to the parties'

3    various positions with respect to the redactions that are

4    proposed for Docket No. 8.

5            So, as I understand it, Docket No. 8 is the

6    agreement between the plaintiff and the third parties that

7    has the site at issue and the services that were proposed

8    to be provided by the plaintiff and now are, as I

9    understand it, not going to be provided by the plaintiff;

10   is that correct?

11           MS. DEBROW:  That's correct, Your Honor.

12           THE COURT:  And when I am looking at the various

13   proposed redactions, it looks to me like you all are

14   proposing redacting certain specific information with

15   respect to fees or costs, as well as certain volumes.

16   There is one proposed redaction that seems to be Alkane's

17   proprietary information and not Crusoe's.

18           So if you want to address that first, Ms. DeBrow, I

19   would appreciate that.

20           MS. DEBROW:  Your Honor, I am assuming you are

21   referring to one of the proposed redactions in the

22   declaration of Mr. Cavness, they are referencing

23   potentially Alkane's proprietary information; is that

24   right?

25           THE COURT:  Well, I think it appears both in the

1    agreement, as well as referenced in the declaration.

2        MS. DEBROW:  I am not aware that there is any

3    Alkane confidential information in the agreement.  The

4    agreement is between Crusoe and Gondola/Modiin.  So the

5    information that we proposed redacting in that agreement

6    consists of financial deal terms; Crusoe's pricing

7    information, in terms of the price it would pay to

8    purchase the gas from Gondola/Modiin; the volumes that

9    Crusoe would require; and then the identities of Crusoe's

10   lenders.

11       And in Mr. Cavness declaration, I believe we also

12   did propose redaction of the price that -- our

13   understanding is that Alkane had agreed to pay.  Out of an

14   abundance of caution, we treated that information as

15   confidential because we regard Crusoe's own pricing

16   information as confidential.

17       THE COURT:  Okay.  Let me just take a pause there,

18   because I don't have those two proposed redactions in

19   front of me, so let me grab those, or have my staff put

20   them in my electronic folder so that I have them

21   accessible here on the bench.  All right.  So my staff is

22   doing that right now.  I apologize for the delay.

23       Let's move on briefly, while my law clerk does

24   that, my understanding also is that there is no argument

25   that Document Entry No. 8-2 can be publicly available; is

 1    that correct?

 2         MS. DEBROW:  That's correct, Your Honor.  That

 3    document also discloses the existence of the agreement.

 4    So, to the extent that the Court is ordering other

 5    documents that acknowledge the existence of that agreement

 6    and the parties thereto to be made publicly available, we

 7    don't object to that.  That one does not disclose

 8    competitively sensitive or financially sensitive

 9    information that are in the other two that we seek to

10    redact.

11         THE COURT:  Okay, great.  So then I have them now.

12    I apologize again.

13         So, in Docket Entry No. 8, it looks like the

14    proposed redactions are not related to Alkane.  I

15    apologize for that mistake of confusing the agreement with

16    the declaration.

17         So let me hear from defense counsel as to why you

18    believe it is critical for these specific figures to be in

19    the public record, as opposed to simply the more complete

20    substantive provisions with the specific amounts available

21    to you and not generally publicly available.

22         MR. SUGDEN:  Thank you, Your Honor, this is Ryan

23    Sugden.  Alkane's position is that Crusoe has made a

24    pricing issue a central pillar of their claims against

25    Alkane.  They have publicly assailed Alkane for improper

1    pricing tactics, alleging that it is poaching customers

2    because of more favorable financial terms.

3         Frankly, and as we put in our Response brief, they

4    have put a pricing dispute in the public eye, and they

5    have done it repeatedly and in the numerous pleadings.

6    Given that, we believe there is a heightened public

7    interest in the pricing information that Crusoe seeks to

8    redact.

9         We don't seek to have the documents in their

10   entirety made public.  We are okay with some of the

11   redactions, it's the pricing terms that we believe should

12   be made public.

13        A related issue is that they have been designated

14   as "attorney eyes only," as well.  That is an issue that

15   we have indicated hampers our ability to defend the claims

16   by not being able to share the information with inside

17   counsel or our client representative.  But I understand

18   that is not the subject of the Motion to Restrict, which

19   is merely whether it should get a Level 1 restriction or

20   not.

21        THE COURT:  All right.  So I want you to focus on

22   the causes of action that have been asserted in the

23   Amended Complaint, which is Docket Entry No. 27.  So I

24   respectfully disagree that any pricing information or

25   volume information is at issue with respect to the alleged

1    infringement of these three asserted patents, which makes

2    up Counts 1, 2, and 3.

3         So I want to focus you on Count 4, which is

4    tortious interference with contract.  And then Count 5,

5    which is tortious interference with prospective business

6    advantage.  The tortious interference with prospective

7    business advantage seems not to be related to the

8    underlying agreement, but the tortious interference with

9    contract could be related and seems to arise from the

10   alleged Digital Flare Purchase Agreement.

11        So explain to me again why it is pertinent for the

12   public to know the specific amounts as opposed to the

13   general allegations.

14        MR. SUGDEN:  Well, Your Honor, as I have indicated,

15   in their motion pleadings for their preliminary

16   injunction, which I agree is entirely on their

17   infringement claims, they have raised this pricing issue

18   in that context.  I understand the Court indicating that

19   that is just simply not relevant.  And if that is the

20   case, then I think we should proceed accordingly in these

21   preliminary injunctive proceedings.

22        With respect to the tortious interference claim,

23   Crusoe has alleged that Alkane's solicitation of the

24   Colorado producers was improper and wrongful.  I make the

25   connection between the pricing allegations; that there was

1    poaching of customers with more favorable financial terms,

2    with the allegations that there was a wrongful and an

3    improper solicitation of the Colorado producers.

4         THE COURT:  Okay.  Does the plaintiff want to

5    address that?

6         MS. DEBROW:  Yes, Your Honor.  This case seems to

7    be almost squarely on all fours with the *Western*

8    *Convenience* Opinion that we cited in our Reply, in that

9    the specific details of the pricing that Crusoe offers to

10   its customers is not necessary to allow the public to

11   understand adequately the issues that are going on in this

12   case, nor even the Court's basis for any subsequent

13   decisions.

14        In that case, there was a specific issue about

15   pricing, and the Court held that, you know, including the

16   details of that were unnecessary to allow the public to

17   appreciate the issues and to allow the Court to adequately

18   address them in any written orders.

19        And given the competitively sensitive nature of the

20   pricing information in this instance, you know, we submit

21   that it should be treated accordingly.  The public

22   certainly doesn't need to have the specific details of

23   that to appreciate the issues.  We were able to, you know,

24   make the case in our pleadings without divulging those,

25   and the same could continue to be true going forward in

1    the case.

2          THE COURT:  All right.  So I respectfully agree

3    with the plaintiff in this matter, that I do not believe

4    that the redactions of the specific pricing and volume

5    information compromises the public's ability to respond or

6    understand the allegations in this case.

7          Now, that being said, to the extent that this case

8    develops and this particular pricing becomes at issue, and

9    particularly if the particular pricing and/or volumes

10   become at issue for a dispositive ruling from the Court,

11   then this Court will always reserve its right to

12   unrestrict that information at that time in light of the

13   Tenth Circuit case law that reminds district courts that

14   restricting information from the public docket should not

15   be done reflexively and should, in particular, be

16   carefully scrutinized when it underlies a substantive

17   decision of the court.

18         So at this point I will grant the Motion to

19   Restrict with respect to Docket Entry No. 8, which is the

20   unredacted Digital Flare Purchase Agreement.  I will order

21   that the plaintiff file on the docket the proposed

22   redacted version.

23         When you do file on the docket the proposed

24   redacted version, you should make light or make reference

25   to what the unredacted version is.  So, for instance, when

1    you file it on the record, the docket entry should say

2    "redacted version of Docket Entry No. 8."  Does that make

3    sense?

4         MS. DEBROW:  Yes, Your Honor, it does.

5         THE COURT:  All right.  And that allows the public

6    to follow what the Court is doing and cross reference what

7    they cannot see with a redacted version.

8         Now let's turn to the declaration of Charles

9    Cavness.  Again, I believe that is both Docket Entry No.

10   8-1 and Docket Entry No. 10; is that correct?

11        MS. DEBROW:  That's correct, Your Honor.

12        THE COURT:  And then again, the proposed redactions

13   appear to relate to those specific costs, as well as some

14   volume information.  And then the issue that I raised was

15   that there was a redaction in paragraph No. 16 to what

16   Alkane's information might be.

17        Mr. Sugden, am I understanding correctly that

18   Alkane does not believe that that redaction should be

19   made?

20        MR. SUGDEN:  Alkane's position is with respect to

21   all pricing information concerning both Alkane's and

22   Crusoe's prices.

23        THE COURT:  All right.  So I have already made a

24   ruling with respect to the plaintiff's pricing.  So is it

25   your position, then, that the Alkane pricing is available

1   for public consumption and should not be redacted?

2        MR. SUGDEN:  This is Ryan Sugden.  Your Honor, to

3   be perfectly frank with you, I haven't had that

4   conversation with my client about one-sided redactions.

5   It was -- the discussion that we had was whether all

6   pricing information should be made public, and our

7   position was that it should be.

8        Understanding the Court's ruling that it should not

9   be, I am going to take a cautious approach, because I

10  haven't had the conversation yet, that all pricing

11  information should then be redacted, consistent with the

12  Court's ruling from a few minutes ago, subject to

13  revision, if necessary, following the conversation.

14       THE COURT:  All right.  So what I am going to do

15  is, Ms. DeBrow, Mr. Sugden, if you can meet and confer

16  with respect to the proposed redactions, I am going to

17  keep restricted as Level 1 restricted, Docket Entry Nos.

18  8, 8-1, and 10.  With respect to Docket Entry 8-1 and

19  Docket Entry No. 10, which are the declarations of Charles

20  Cavness, I am going to have you file a redacted version no

21  later than the close of business tomorrow, September 9,

22  2022.

23       To the extent that Alkane also wants its

24  information redacted, the Court finds that it is

25  consistent with its ruling that it does not compromise the

1    public's ability to assess what the parties' positions are

2    or any court rulings with that information redacted at

3    this point, and that it could be commercially sensitive to

4    the respective companies.

5         If Alkane doesn't mind it being public, then you

6    all can simply submit a proposed redaction -- a redacted

7    version that only has Crusoe's information.  Does that

8    make sense to everybody?

9         MS. DEBROW:  Yes, Your Honor.

10        MR. SUGDEN:  This is Ryan Sugden.  Yes, it does.

11        THE COURT:  Yes, Ms. DeBrow?

12        MS. DEBROW:  I was going to raise one other issue,

13   if I may, related to Docket Entry 8, which is the

14   agreement.  It came to our attention, or was brought to

15   our attention during the meet-and-confer process that the

16   version that was filed has a formatting error with

17   DocuSign that is causing the signatures not to display

18   properly.  So, with the Court's permission, we would file

19   as the redacted version a copy of that document in which

20   the signatures display properly.

21        THE COURT:  That is fine.  So why don't you get

22   that done and, again, make the appropriate reference to

23   the restricted document, no later than the close of

24   business tomorrow, okay.

25        MS. DEBROW:  Yes, Your Honor.

1          THE COURT:  All right.  So consistent with the

2    rulings on the record, the Court grants in part and denies

3    in part Plaintiff's Motion to Restrict, which is Docket

4    Entry No. 13.  Docket Entry Nos. 12, 12-1, 12-2, 12-3, and

5    8-2 will be unrestricted from the public record.

6          Docket Entry No. 8, Docket Entry No. 8-1 and Docket

7    Entry No. 10 will remain as Level 1 restricted.  In

8    addition, the plaintiff will file a redacted versions of

9    Docket Entry No. 8 and Docket Entry 8-1/10 no later than

10   the close of business September 9, 2022, consistent with

11   the ruling made by the Court on the record today.

12         I think that takes care of the Motion to Restrict,

13   and so then we can turn, unless anyone else has something

14   on the Motion to Restrict, to the Motion to Expedite

15   Discovery, which is Docket Entry No. 11.  Is everyone

16   prepared to turn to that?

17         MS. DEBROW:  Yes, Your Honor.

18         MR. SUGDEN:  This is Ryan Sugden.  Yes, Your Honor.

19         THE COURT:  So let's turn -- I am using the chart

20   that you all submitted as my guide here.  I have had an

21   opportunity to preliminarily look at the asserted patents,

22   which are found at Docket Entry Nos. 1-1, 1-2, and 28-1;

23   the 307, 309, and 821 patents.  I will admit to you that I

24   have not examined those in-depth, nor have I had an

25   opportunity to carefully look at the prosecution histories

1    of any of those respective patents.

2           But this proceeding is very much focused on what

3    kind of expedited discovery you all need to proceed to the

4    preliminary injunction hearing, as well as setting

5    briefing with respect to the preliminary injunction and

6    the TRO.

7           I note, as a framework before we start, that in the

8    Motion to Expedite Discovery, on page 1, the plaintiff

9    says, "At this stage, the plaintiff is not seeking broad

10   discovery on the full merits of the claims and defenses."

11          That is the framework that I am using because,

12   again, I am not attempting to try to figure out what

13   discovery may or may not be allowed in this case in

14   general.  My focus is on what good cause there is to

15   permit expedited discovery in order to have an efficient

16   and complete preliminary injunction hearing.

17          So, with that in mind, let's turn to the first

18   issue, which is the request for inspection.  So there is a

19   request for inspection:  "Inspect, survey, videotape and

20   photograph Alkane's site layout and operations at each

21   location where Alkane has at any time or is currently

22   performing bitcoin mining operations, including but not

23   limited to the Surprise 4 Pad."

24          Ms. DeBrow, are you going to be handling these

25   issues for the plaintiff?

1          MS. DEBROW:  Yes, Your Honor.

2          THE COURT:  All right.  So, Ms. DeBrow, given the

3    fact that the Motion for Preliminary Injunction is focused

4    on the Surprise 4 Pad, located in Jackson County,

5    Colorado, and is associated with one or two particular

6    entities, why, at this point, in anticipation of the

7    preliminary injunction hearing, should the Court require

8    an inspection, survey, videotaping, photograph of any site

9    layout, regardless of location?

10          MS. DEBROW:  Well, Your Honor, respectfully, our

11   request for relief on the Motion for Temporary Restraining

12   Order and Preliminary Injunction is not so limited.  We

13   have asked for injunctive relief against continued

14   infringement.  And we believe that defendant is infringing

15   at the Jackson County, Colorado, site, or will soon be.

16   And then we have reason to believe that they are doing so

17   at other sites.

18          The materials that we cited in our infringement

19   chart in the pleadings relate to some other sites where

20   Alkane has operations, in addition to the more general

21   marketing and system capability materials.  So the request

22   for inspection is tied to the belief that there is ongoing

23   infringement at multiple sites.

24          And we understand the need to have specificity in

25   any sort of injunction, and so the request to inspect and

1   have documents related to site layouts where the accused

2   products are, is necessary to allow both the plaintiff and

3   the Court to understand specifically where infringement is

4   ongoing and which sites should be enjoined.

5          THE COURT:  And where are those sites other than

6   Surprise 4 Pad?

7          MS. DEBROW:  We believe that there is infringement

8   potentially in North Dakota and in Texas based on publicly

9   available information that we have obtained.  Given the

10  marketing-type materials that we also cited in our

11  pleadings, there is the possibility that the accused

12  products have been deployed at other sites, of which we

13  are not yet aware.

14         THE COURT:  Okay.  Mr. Sugden, are you going to be

15  speaking for the defendant?

16         MR. SUGDEN:  Yes, I will, Your Honor.

17         THE COURT:  All right.  You can proceed.

18         MR. SUGDEN:  Thank you, Your Honor.  I think Your

19  Honor's question to Ms. DeBrow was right on point, which

20  is why is any site inspection necessary given that the

21  focus of the motion is on the Colorado site, and we will

22  not have any equipment on the site until, at the earliest,

23  November 1st.

24         The remaining request for an inspection at each

25  location is a classical fishing expedition.  The

1    plaintiff, it would appear, is looking for information

2    that it doesn't yet have about actual infringement.  And

3    we are in an expedited discovery posture, where the

4    discovery needs to be narrowly tailored to the issues that

5    will be before the Court.

6         I don't believe that an inspection at each location

7    that they are speaking, which is unspecified, is necessary

8    for this Court to enter the relief that would be necessary

9    in this case should plaintiff prevail, which, of course,

10   we do not agree with but, nevertheless, an inspection

11   would not be necessary.

12        THE COURT:  Okay.  Ms. DeBrow, anything further?

13        MS. DEBROW:  Your Honor, respectfully, this is the

14   same type of injunction that a patent plaintiff would

15   ordinarily seek, which is to enjoin infringing conduct or

16   the further use of infringing products.  And we are aware

17   of at least one site where products will be deployed that

18   we believe to infringe, and a couple of other sites where

19   we believe infringement is already ongoing.

20        The fact that we are unable at this time to

21   identify with specificity all of the sites at which Alkane

22   has put its infringing product, should not bar injunctive

23   relief against ongoing infringement, in the same way that

24   a patent plaintiff would be entitled to get if it

25   satisfies the requirements for a preliminary injunction

1    against different types of products.

2         You know, Mr. Sugden continues to assert that this

3    should be so burdensome, and yet he has not said how many

4    sites are potentially at issue for this inspection.  It

5    may be just the three that we believe exist, it may be far

6    more than that.  Because they have not given us any sort

7    of indication as to how many sites we would be talking

8    about, it is difficult to, you know, understand these kind

9    of conclusory allegations of this being overly burdensome

10   and inappropriate.

11        THE COURT:  All right.  Isn't that really at the

12   core of the question of infringement?  So you have

13   asserted and argued that a patentholder would be able to

14   get injunctive relief to prevent ongoing infringement.

15   But the Court isn't going to simply enter injunctive

16   relief on speculation that things are occurring, and nor

17   have you brought a specific allegation of infringement as

18   to those particular sites.

19        So why would you be permitted, on an expedited

20   basis, to get inspection?  Why wouldn't you have to first

21   identify and have a good-faith basis of there being

22   infringing systems at these other sites before you would

23   get access or discovery to them?  The Tenth Circuit case

24   law is clear that discovery is not meant to find claims,

25   discovery is meant to flush out claims that parties

1    already have.

2         MS. DEBROW:  Understood, Your Honor.  And,

3    respectfully, we have alleged specifically that Alkane's

4    systems, as described in its publicly available marketing

5    materials, infringe, regardless of where they are

6    installed, whether that is at a site in Colorado, a site

7    in Texas, a site in North Dakota, or elsewhere.

8         We have been able to identify sites where we

9    believe those products are set up and operating, and we

10   are requesting injunctive relief to bar further use of the

11   accused products at any site.  The simple fact that we

12   cannot obtain through public information the location of

13   all of those accused systems, does not change the fact

14   that we have pled specifically that the systems,

15   themselves, infringe, regardless of the site that they are

16   set up on.

17        In other words, infringement is not site specific.

18   So this request for inspection was intended to identify

19   with specificity the sites that would need to be enjoined.

20   The inspection is not necessary to demonstrate

21   infringement, per se, we have done that through our

22   pleadings, but it is helpful to confirm that the systems

23   operate in the way that the materials say that they do and

24   to allow us to the test the veracity of, you know,

25   defenses to infringement that Alkane may raise.

1            THE COURT:  All right.  So tell me where on the

2    docket you are referring to in terms of identification of

3    these sites.

4            MS. DEBROW:  That will take me just a moment, Your

5    Honor.

6            Docket 9, page 4, we reference sites in North

7    Dakota and Texas.  I believe there is also a reference to

8    sites in North Dakota and Texas, in addition to Colorado,

9    in the Complaint, so I don't have that citation handy at

10   the moment.  And then in our expert's declaration, he also

11   cites materials that Alkane made generally available to --

12   about its systems, and then cites some photographs, which

13   we believe were from a site in Texas, based on publicly

14   available information, but I have seen in some of Alkane's

15   more recent filings that they have identified those as

16   corresponding to a site in North Dakota.

17           THE COURT:  Okay.  So when I look at Docket Entry

18   No. 9, on page 4, which is ECF page 10, I believe, you

19   indicate "Alkane has sites in North Carolina and Texas and

20   now has expanded to Colorado."  Is that what you are

21   referring to?

22           MS. DEBROW:  Yes.  That is the reference to that

23   that I was able to find quickly.  We can further review

24   the documents, and I will continue to do so to find other

25   references to those.

 1          THE COURT:  And then when I go to Docket Entry No.

 2     9-10, which is Exhibit K, Alkane's website, I don't see

 3     anything that suggests that these specific things are

 4     deployed at specific places in North Dakota or Texas.

 5     Frankly, the way that the website is printed in the pdf,

 6     it is difficult to read, at all.

 7          MR. GOVETT:  Your Honor, this is Brett Govett.  If

 8     I might just help out, just to speed things along a little

 9     bit, if that is okay.

10          THE COURT:  All right.

11          MR. GOVETT:  If we look at 9-15, this is

12     Dr. Hilbert's declaration, and the materials considered,

13     there is citation to the Google Maps images of the

14     Seminole, Texas, site.

15          THE COURT:  What page are you on?

16          MR. GOVETT:  I am on 21 of 78.  It is the third

17     entry, through about the sixth entry, on page 1,

18     "Materials Considered."

19          THE COURT:  So you are looking for inspection of

20     the Seminole, Texas, site; is that correct?

21          MR. GOVETT:  Yes, Your Honor, that is one of the

22     sites, yes.  And then that is carried over to the

23     infringement charts, which are attached to Dr. Hilbert's

24     declaration.  For example, on 26, 9-15, page 26 of 78,

25     there is the Seminole, Texas, site there.

1          There was a paper filed today by Alkane which says,

2     no, that is not in Seminole, it is in North Dakota, which,

3     for us, further, you know, reinforces the fact that we do

4     need a site inspection, because this was just pulled off

5     the internet.  That is all we were able to do is use

6     Google Earth, Google Maps, that sort of thing, and we

7     provide the URL there.

8          And that is cited throughout -- that Seminole site

9     is what we were able to find, and it is cited throughout

10    our claim charts.  So the real crux of what you are

11    asking, I believe, is in the claim charts.

12         THE COURT:  Okay.  So do you have a quick reference

13    to the North Dakota site in these claim charts?

14         MR. GOVETT:  The North Dakota site is basically, we

15    were not -- if my memory is correct, we were not able to

16    find anything other than that they were operating sites in

17    North Dakota.  The public record did not reveal anything

18    other than, if you look at Exhibit L -- sorry, 9-11, there

19    is testimony before the North Dakota Energy, Development,

20    and Transmission Committee that we cite and we discuss,

21    and it is coming from Alkane, and we talk about that.

22         MS. DEBROW:  Your Honor, this is Ms. DeBrow again.

23    I would also point to, now having had a chance to look

24    back at the version of Alkane's website that you pointed

25    to -- apologies that that is hard to read, you are

1   right -- but at the very bottom of that, where it talks

2   about "Contact Alkane," it lists that they are operating

3   in the Williston Basin, which is in North Dakota, and

4   Permian Basin, which is in Texas.

5        And so that additionally forms the basis for our

6   belief that they have infringing sites in both of those

7   locations.

8        THE COURT:  All right.  Mr. Sugden?

9        MR. SUGDEN:  Thank you, Your Honor.  I think what

10  this illustrates is that this is a fishing expedition.

11  The plaintiff does not have an understanding of what

12  information it actually seeks, what sites it actually

13  intends or wants to inspect.  And pointing to the fact

14  that our website indicates what basins we operate in is

15  not sufficient to identify inspection sites.  And it

16  indicates, it appears, plaintiff is seeking an inspection

17  of every single site where we operate, because their

18  allegation is apparently that every single site where we

19  operate infringes, though our response that was filed

20  yesterday, demonstrates that Alkane doesn't do any bitcoin

21  mining, at all, third parties do.

22        So I think that this request remains not

23  proportional, remains overbroad, and it doesn't seem

24  narrowly tailored that -- that it is a narrowly tailored

25  request that is required for expedited discovery.  I think

1   that is what is being missed here, not by Your Honor, but

2   just being missed by plaintiff's indication that they want

3   inspections everywhere, is that this is narrowly tailored

4   to the preliminary injunction hearing.

5        There may be requests that are appropriate as part

6   of broader discovery, but not as part of expedited

7   discovery.  Thank you.

8        THE COURT:  All right.  So pending before the Court

9   is this first issue with respect to the request for

10  inspection.  My understanding is that the Surprise 4 Pad,

11  the equipment has not been deployed yet; is that correct?

12       MR. SUGDEN:  This is Ryan Sugden.  Yes, that is

13  correct.

14       THE COURT:  All right.  So based on what I see in

15  front of me, as well as the declaration of Dr. Hilbert and

16  the associated claim charts, I am going to permit

17  inspection of only the Surprise 4 Pad.  To the extent that

18  it has equipment or doesn't have equipment, that will be

19  left to be seen, as well as the identified Seminole,

20  Texas, site.

21       Now, that is focused, again, and this ruling is

22  focused on what we need with respect to the preliminary

23  injunction hearing.  Let me be very clear, however, to the

24  extent that you all are going to be taking other kind of

25  discovery that may lead to a conclusion that substantially

1    similar or identical systems are being deployed at other

2    defendant sites, and if the Court were to find that

3    injunctive relief was necessary for certain sites that

4    have been inspected, I don't necessarily think that the

5    lack of an inspection precludes the Court, so long as it

6    has evidence, to extend the injunction to other sites that

7    are established to have the same operating systems.

8            But I am not going to require Alkane to identify

9    all of the sites and operations that it has -- mining

10   operations.  To the extent that their position is that

11   none of their current mining operations perform bitcoin

12   operations; so neither the Seminole, Texas, site nor the

13   Surprise 4 Pad, located in Jackson County, Colorado, that

14   is going to be another issue because it looks like the

15   request for inspection is only targeted at those locations

16   that at any time or currently are performing bitcoin

17   mining operations.  That is how I read this.

18           Am I construing that correctly, Ms. DeBrow?

19           MS. DEBROW:  Your Honor, that is how it is written.

20   We have some other discovery requests that are more

21   broadly directed to how we define the accused system,

22   which is, you know, flare gas mitigation systems that are

23   used to power distributed computing systems.  And as we

24   talked about at the last hearing, the claims are not

25   limited to bitcoin mining operations.

1          And so our contention is that if they are using the

2     flare gas mitigation system, as described in the claim, to

3     power distributed computing systems, as described in the

4     claims, that that would infringe, even if the distributed

5     computing system is not conducting bitcoin mining.

6          THE COURT:  I understand that, and I also don't

7     read most of these claims.  There is a dependent claim,

8     the 821 patent, that appears to be limiting it to bitcoin

9     mining.  But, in general, the larger independent claims do

10    not seem to be limiting it to a particular purpose.

11         All right.  So let's talk about the next one,

12    interrogatory --

13         MS. DEBROW:  One additional quick point, Your

14    Honor, if I may, is that the Seminole, Texas, site photos

15    that are cited in our infringement chart that are attached

16    to the expert declaration, we obtained those from the

17    internet, and based on that information, we believed that

18    setup to be in the Seminole, Texas.  Alkane filed a

19    declaration today in which one of its employees attests

20    that those photographs are actually from a site in North

21    Dakota.

22         And so for that reason, we would request that we be

23    permitted to also inspect that site in North Dakota.  Or,

24    I suppose to say it another way, to inspect the site that

25    corresponds to those photographs.  And if that is not

1    Seminole, Texas, then, you know, inspect the North Dakota

2    site.

3         THE COURT:  So I am a little bit troubled by that,

4    because what we are arguing about today, or at least what

5    I am understanding you are arguing about, is that you have

6    a claim chart that I am relying on to make these

7    determinations as to the expedited basis of discovery.

8         I am certainly not trying to figure out what the

9    entirety of the scope of discovery might be.  Again, I go

10   back to the plaintiff's own statement that right now,

11   "broad discovery on the full merits of the claims and

12   defenses are not being contemplated."

13        What I am trying to contemplate is what I need to

14   get to you all before we proceed on a preliminary

15   injunction hearing.  And so I am troubled by the fact that

16   they are identified as being in Seminole, Texas, but now

17   they are not in Seminole, Texas, which then raises the

18   question of why you all would have concluded that they

19   were in Seminole, Texas, to begin with.

20        MS. DEBROW:  Your Honor, we concluded that because

21   that was the information that was available to us on the

22   internet.  And I wish that it was not imperfect.  But the

23   plaintiff has now said that that site is not in Seminole,

24   Texas.  And so I would assume that they have more accurate

25   information than what we were able to obtain online.

1          But our factual allegations, you know, we found

2     these photos of their system and used that to help build

3     our infringement contention chart, and it seems like

4     perhaps the internet pointed us to an incorrect site.

5     But, importantly, Alkane has not denied that that is their

6     system, but they say that it is operating at a different

7     location.

8          THE COURT:  All right.  Mr. Sugden?

9          MR. SUGDEN:  Your Honor, this site is in North

10    Dakota, it is not in Seminole, Texas.  I would agree with

11    the concern over the inaccuracies in the claim chart.  I

12    would oppose inspections of locations that the plaintiff

13    has not identified.  They haven't identified North Dakota,

14    we just corrected the record.

15         THE COURT:  Well, I don't know that that is

16    entirely accurate, either.  I mean --

17         MR. SUGDEN:  Your Honor, this is Ryan Sugden.  What

18    I was intending to say is, we corrected the record that

19    this is not the site in Seminole, Texas, it is in North

20    Dakota.  Giving inspections at both sites when they --

21    they had to have evidence towards North Dakota, the

22    photos, or to Seminole, Texas, which is what they've

23    identified incorrectly.  If the location that they want to

24    see it is in North Dakota, and the Court has ordered them

25    to see a location, like the one they identified in the

1    claim chart, the correct location would be North Dakota.

2           THE COURT:  All right.  So I will allow inspection

3    at the Tioga, North Dakota, operation and not the

4    Seminole, Texas, site, based on paragraph No. 18 of Docket

5    Entry No. 36, but the inspections will be limited at this

6    juncture to the Jackson County location and the Tioga,

7    North Dakota, location that is depicted in the photograph.

8           All right.  Let's move on to Interrogatories 2

9    through 10:  "Request to identify all Documents and

10   Communications by Bates label is separate interrogatory,

11   overbroad, unduly burdensome."

12          So I do think it is a separate interrogatory.

13   There is no requirement by Rule 33(a) of the Federal Rules

14   of Civil Procedure for you all to identify documents by

15   Bates number unless the responding party is using Rule

16   33(d) to respond.

17          Having not seen any substantive responses, because

18   I'm assuming none have been propounded yet, why would the

19   plaintiff be entitled to identification by Bates number of

20   the documents that are correlated in addition to any sort

21   of response to the interrogatories?

22          MS. DEBROW:  Your Honor, respectfully, we included

23   that as part of the interrogatory, not as a separate

24   interrogatory, but as a subpart that is typically just

25   employed in discovery requests to help the parties

1    identify the documents relevant to the responses and deal

2    with each side's production efficiently.  And we would

3    expect that we would likely end up on the receiving end of

4    similar requests.

5          So we do not view that as a separate interrogatory,

6    but instead, you know, part of the question of seeking

7    relevant information for each of these inquiries.

8          THE COURT:  But you would agree, Ms. DeBrow,

9    wouldn't you, that it is not required by Rule 33(a) for

10   the parties to do so, and there is no information, at

11   least at this point, that the defendant is intending to

12   invoke Rule 33(d) to respond.

13         MS. DEBROW:  I agree with that, Your Honor, and it

14   is not strictly required, and we don't have reason to

15   believe that they are going to invoke 33(d) in response to

16   any of these at this point.

17         THE COURT:  All right.  Mr. Sugden?

18         MR. SUGDEN:  Your Honor, I don't have much to

19   substantively add.  I agree with your statements, and I

20   agree that if we do invoke the business record subpart of

21   Rule 33, we will identify those business records.

22         THE COURT:  All right.  Particularly given the

23   expedited nature of this, I am not going to require a

24   further identification by Bates name label in response to

25   the documents that are associated with each substantive

1    interrogatory response.

2         To the extent that the interrogatory responses do

3    invoke Rule 33(d), I would expect that the party invoking

4    Rule 33(d) would be familiar with and comply with the

5    requirements that the Tenth Circuit in this District have

6    set out with respect to responding pursuant to Rule 33(d).

7         But, otherwise, particularly given the expedited

8    nature and the lack of information that the production is

9    going to be so voluminous that it is difficult for the

10   receiving party to ascertain what documents support the

11   responses to each of the interrogatories, I am not going

12   to order that at this time.

13        So then let's turn to Interrogatory No. 2:

14   "Identify each offer for sale or sale of the accused

15   product, including the nature of each offer or sale, dates

16   of each offer or sale, the products offered or sold, the

17   buyer, distributor, and the individuals at Alkane involved

18   in each offer or sale.  Your identification should also

19   identify by Bates number all Documents and Communications

20   related to Your response."  We dealt with the last request

21   or portion of that interrogatory.

22        So let me ask you, it looks to me, Mr. Sugden, that

23   you all do not have an objection to identifying the actual

24   sale; is that right?

25        MR. SUGDEN:  This is Ryan Sugden.  The actual sale

1    with respect to the Colorado -- the Jackson County

2    location?

3            THE COURT:  No, actual sale.  I don't read

4    Interrogatory No. 2 to be limited to just Jackson County,

5    Colorado.  I read Interrogatory No. 2 as the plaintiff

6    seeking information as to where these alleged accused

7    products may be.

8            MR. SUGDEN:  Our position with respect to

9    Interrogatory 2, is that by seeking past sale information,

10   it is a backwards looking interrogatory, which is not

11   focused on the issues before the Court for the preliminary

12   injunction.

13           The *Qwest Communications v. Worldquest Networks*

14   decision is applicable here.  I didn't cite it in the

15   chart, but it indicates that conduct that has already

16   occurred is not relevant to the pending injunctive relief.

17   And so that is our position; is that past sales just

18   aren't relevant to the PI hearing.

19           THE COURT:  All right.  Ms. DeBrow?

20           MS. DEBROW:  Your Honor, past sales would identify

21   the site at which that accused product is currently

22   deployed and operating.  And so we have asked for this

23   information to identify where the accused products are and

24   where their ongoing use is a continuing act of

25   infringement, where those products are located.

1       And so it is not true that that is backward

2    looking.  The fact that a sale may have occurred in the

3    past certainly doesn't mean that the continued use of

4    those products, by whoever they have been sold to or at

5    whatever site they are deployed, is in the past.

6       THE COURT:  I agree.  So let's focus on the offer

7    for sale.  So I agree that any sale, if you want to term

8    it "past," but that is currently existing, would be

9    information that is relevant to the preliminary injunction

10   hearing to the extent that the plaintiff is seeking

11   information as to where the accused systems may be

12   deployed.  And those deployed systems may be, although I'm

13   not obviously substantively ruling that they are,

14   encompassed by the preliminary injunction hearing.

15      But what about offers for sale that have not been

16   consummated?

17      MS. DEBROW:  Your Honor, we included that to get at

18   the fact that merely because, you know, everybody hasn't

19   signed on the dotted line as of this date, if there are

20   contemplated or planned deployment of a product,

21   particularly one that is going to be deployed in the near

22   future, that should be included in the response to this

23   interrogatory.

24      And so we did not want to narrowly limit it to

25   sales and, you know, open up the opportunity for mischief

1    in not disclosing a sale that is soon to be consummated.

2        THE COURT:  Well, isn't it logical to conclude, if

3    they are going to deploy these systems, that the sale

4    would have already been consummated?  The term "offer for

5    sale," putting aside the fact that it has a particular

6    meaning in the context of patent litigation, it seems

7    fairly broad.  It seems like it could encompass any sort

8    of marketing that they are doing of these accused products

9    anywhere.

10        MS. DEBROW:  I agree, Your Honor, that it could be

11    interpreted that broadly.  And without knowing exactly how

12    Alkane structures its deals, I am not equipped to comment

13    on whether, you know, an offer for sale would have

14    happened, you know, far in the past compared to when the

15    equipment would be deployed or whether, you know, the sale

16    would become final only closer to deployment.  I just

17    don't have firsthand knowledge as to how they structure

18    their sale agreement or deployment agreement.

19        THE COURT:  All right.  Mr. Sugden?

20        MR. SUGDEN:  Thank you, Your Honor.  My concern was

21    also looking backwards; that any offer for sale in the

22    past at any time would be responsive to this

23    interrogatory.  And if that sale was never consummated

24    into any sort of deal that never resulted in any

25    deployment, that wouldn't be relevant, it wouldn't be

1    proportional, and it would be very burdensome to identify.

2         So if this is focused on pending offers for sale

3    that have not been consummated, that is the narrowing that

4    I think is useful to us.  I question its relevance to the

5    PI hearing, but that narrowing would be helpful.

6         THE COURT:  All right.  So with respect to

7    Interrogatory No. 2, I am going to require a response for

8    all consummated sales of the accused products, as well as

9    pending sales of the accused products.  That means that I

10   am not looking for Alkane to produce information or

11   respond with respect to any offers for sale that have in

12   the past been attempted but not consummated or that are

13   simply marketing.

14        Does that make sense to both sides?

15        MS. DEBROW:  Yes, it does, Your Honor.

16        MR. SUGDEN:  It does.

17        THE COURT:  All right.  So then let's move on to

18   Interrogatory No. 4.  So interrogatory No. 4 reads:

19   "Describe in detail (1) the creation and development of

20   the Accused Product and (2) any use of -- or reference

21   made to -- Plaintiff's products in the creation or

22   development of the Accused Products, including any efforts

23   to reverse engineer or replicate Plaintiff's products or

24   distinguish the Accused Products."

25        Now, Ms. DeBrow, let me understand what the

1    plaintiff's perspective is.  Certainly the design and

2    development of the accused products and the knowledge of

3    any sort of plaintiff's products might go to willfulness,

4    but how does it go to a preliminary injunction, where you

5    are seeking to enjoin infringement?

6         MS. DEBROW:  Your Honor, the design and development

7    of the product, including whether they were designed and

8    developed with reference to Crusoe's products and systems,

9    does go to the likelihood of Crusoe's success in proving

10   Alkane's infringement.

11        For example, if Alkane has documents that

12   demonstrate that it was designing a layout or some aspect

13   of its product with reference to Crusoe's products and

14   systems, that evidence would certainly bear on the

15   question of how likely it is to be established that Alkane

16   is infringing.

17        To put it another way, if there is evidence that

18   copying was going on, that certainly bears on the

19   likelihood of success in proving infringement.

20        THE COURT:  So I respectfully disagree about that,

21   because doesn't the federal circuit case law tell me that

22   when I determine infringement, I am not comparing the

23   accused product to the patentholder's product, I am

24   comparing the accused's products to the claims at issue

25   and the different limitations in the claim.

 1           So even if the plaintiff's product does not

 2      actually embody the claims of the patents-in-suit, the

 3      defendant could still be infringing.  And so if I am

 4      comparing your product to their product or they are

 5      comparing your product to their product, wouldn't you then

 6      have to establish that your product embodies the

 7      limitations to the patents-in-suit?

 8           Again, please correct me if I am wrong, but I

 9      believe the relevant analysis is the comparison of the

10      accused products to the limitations of the claims of the

11      patents-in-suit; that the patent is a right of exclusion,

12      as opposed to a property right that is reflected

13      inherently by Crusoe's products.

14           MS. DEBROW:  Your Honor, I don't disagree with you

15      on your understanding of patent law, but I would say that

16      in this instance, our products do practice the asserted

17      claims of the patent, and so in that situation, whether or

18      not the plaintiff -- or the defendant was copying aspects

19      of our patented products, does have relevance to the

20      question of infringement.

21           THE COURT:  All right.  Mr. Sugden?

22           MR. SUGDEN:  Your Honor, this is Ryan Sugden.  The

23      only piece I would add to the Court's record analysis is

24      that this is also the sort of information that may be

25      appropriate or one would expect in ordinary discovery.

1    But, again, we are in a much more expedited posture where

2    the request needs to be narrowly tailored to what the

3    Court is going to be decided.  Given that this is not what

4    the Court is going to be deciding, we don't think it is

5    appropriate.

6        THE COURT:  All right.  So based on my

7    understanding of what I need to do to make a determination

8    if there is a substantial likelihood of success on the

9    merits with respect to infringement, as opposed to willful

10   infringement, I am not going to permit Interrogatory No. 4

11   on an expedited basis.

12       Let me be very clear, however, that that does not

13   mean that I believe Interrogatory No. 4 is not proper for

14   more broad discovery on the claims and defenses of this

15   case, it is simply because, again, what I am trying to get

16   you all to and the Court to is an expedited proceeding on

17   the preliminary injunction, and so that entails a more

18   limited scope of discovery.

19       In my own independent research, I found no

20   preliminary injunction in which the district court looked

21   at factors with respect to willfulness, nor do they

22   discuss design or development of the accused products in

23   making any determination with respect to the infringement

24   at issue or the substantial likelihood of success on

25   infringement.  And I don't see any authority in this chart

1    to suggest otherwise.  So I am not going to permit

2    Interrogatory No. 4 at this time.

3          Interrogatory No. 5 looks like it has been

4    withdrawn with respect to the preliminary proceeding.

5          So let's turn to interrogatory No. 7:  "Describe in

6    detail when and under what circumstance You became aware

7    of the existence of the Asserted Patents and what actions

8    You took upon becoming aware of the Asserted Patents,

9    including any efforts by You or any other Person or entity

10   to assess the validity, infringement or enforceability of

11   the Asserted Patents or to design around or avoid

12   infringement of the Asserted Patents, and any efforts by

13   You to gather information and download Documents and

14   Communications from Crusoe's website, the identity of all

15   Persons with knowledge of such facts and circumstances,

16   and the dates of such awareness."

17         Putting aside the fact that this interrogatory may

18   or may not have numerous discrete subparts, and it seems

19   like it could be construed as two or more interrogatories,

20   what is defendant's objection to the substance of

21   Interrogatory No. 7?

22         MR. SUGDEN:  Well, Your Honor, given your prior

23   ruling on Interrogatory No. 4, I think the same analysis

24   applies here to Interrogatory No. 7; that I would assume

25   the information that is being sought for Interrogatory No.

1    7 would go to willfulness and not to infringement, which

2    is not part of the Court's analysis.

3          THE COURT:  All right.  Ms. DeBrow?

4          MS. DEBROW:  Your Honor, our basis for including

5    this interrogatory is very similar to the one that we just

6    discussed in Interrogatory No. 4, so being respectful of

7    the Court's ruling on that, we overlap here.  You know, I

8    think that your decision on that issue applies here, as

9    well, and so we would be willing to withdraw that one at

10   this time, to be re-raised later in discovery.

11         THE COURT:  All right.  So Interrogatory No. 7 will

12   be deemed withdrawn at this time.  Again, this is not a

13   substantive ruling about the propriety of the discovery

14   request in general discovery, we are simply focused on

15   what expedited discovery will be permitted in advance of

16   the preliminary injunction hearing.

17         So, Interrogatory No. 8:  "Separately for each

18   Asserted Claim of the Asserted Patents, identify all legal

19   and factual bases for your contention that such claim is

20   not infringed by the Accused Products, including a chart

21   that sets forth each claim element that you contend is not

22   satisfied by the Accused Products along with a

23   substantive, particularized description of why you contend

24   that element is not satisfied, including citation to

25   specific components and functionality of the Accused

1   Products."

2          So, Mr. Sugden, I don't understand how this could

3   be an unduly burdensome request for a claim chart,

4   particularly given that infringement and the analysis of

5   infringement is at the very core of Counts 1 through 3 of

6   the Amended Complaint and certainly at the core of the

7   preliminary injunction and plaintiff's request for

8   preliminary relief.

9          MR. SUGDEN:  This is Ryan Sugden.  Your Honor, you

10  are correct, this information is relevant and it is going

11  to be addressed by the Court in its ruling on the

12  preliminary injunction.  In part, this objection is that

13  it is seeking a claim chart at an early part of this case,

14  as part of written discovery.  However many days we have

15  to respond to written discovery, which is an issue to be

16  addressed, is when we have to produce a claim chart.

17         In conferral upon this dispute, plaintiff's counsel

18  raised, well, this is information that would, under the

19  patent rules, needs to be disclosed, and we don't

20  disagree.  But just because it is information in the form

21  that has been requested that would ordinarily be part of

22  discovery doesn't mean it is part of expedited discovery.

23         So this information may come out in the form of a

24  declaration but perhaps not a claim chart.  This is really

25  about the front loading of information that is part of

1    written discovery and in the manner that they requested

2    it.

3          THE COURT:  So I guess my response to you,

4    Mr. Sugden, is very practical, which is this District and

5    this Court uses the claim chart to guide its analysis.  I

6    would say that to the extent that you want to be most

7    persuasive to this Court, you are going to need a claim

8    chart.  That is the way the patent local rules anticipate

9    it being done.  And, for better or worse, we are in a

10   preliminary injunction proceeding.

11         It would be one thing if your argument with respect

12   to the lack of likelihood of success on the merits is

13   noninfringement.  So, for instance, you could argue that

14   the plaintiff failed to come forward with sufficient

15   evidence that each and every element of the patent

16   limitations are met, and then decide that you want to rely

17   on a declaration to do so.  I, frankly, think that is to

18   your peril.

19         So I am going to require a claim chart.  I don't

20   necessarily expect that the claim chart will not be

21   amended or it would be exhaustive or would supplant what

22   we have to do under the local patent rules should this

23   proceed past a preliminary injunction stage, but I am

24   going to require a claim chart, mostly for my own use,

25   because we are all going to be doing this in an expedited

 1   fashion, and the easier for me to process the information,

 2   I think the better it is for everyone, and the more

 3   optimism I have that I will be able to come to an

 4   appropriate conclusion in an efficient manner.

 5        MR. SUGDEN:  Understood, Your Honor.

 6        THE COURT:  All right.  So then moving on to

 7   Request for Production No. 1, let's look at Crusoe's

 8   reduced request, which is it seeks documents sufficient to

 9   show the design and operation of the accused product.

10        Mr. Sugden, can you tell me what is improper about

11   the reduced request?

12        MR. SUGDEN:  Your Honor, we do agree with that

13   request.  Both RFP 1 and RFP 2 have been resolved through

14   that modification of plaintiff's request for production.

15        THE COURT:  All right.  So RFP 1 and RFP 2 will be

16   allowed with respect to the narrowed proposition that is

17   reflected in the column indicated by Crusoe's position.

18        Let's move to RFP No. 3:  "All Documents and

19   Communications evidencing, regarding, reflecting, or

20   relating to Your building process, site design, or set-up

21   of equipment comprising the Accused Product."  Then, let's

22   again limit this to the Surprise 4 Pad and the Tioga,

23   North Dakota, pad.

24        So, with those limitations, Mr. Sugden, what would

25   the objection be from defendant?

1        MR. SUGDEN:  This is Ryan Sugden.  We can accept

2    those modifications, Your Honor.

3        THE COURT:  Okay.  RFP No. 4:  "All Documents and

4    Communications evidencing, regarding, reflecting, or

5    relating to any agreement between You and Gondola and/or

6    Modiin."

7        So, Ms. DeBrow, this is certainly relevant to the

8    claims in the Amended Complaint with respect to tortious

9    interference, but how is it relevant to what we need to do

10   at the preliminary injunction stage?

11       MS. DEBROW:  Your Honor, during the meet and confer

12   process, we agreed to revise this one to limit it to

13   agreements "relating to deployment or installation of the

14   Accused Products at any site operated by Gondola and/or

15   Modiin."  It is often the case that agreements between

16   parties of this type will reflect specifics of the

17   equipment that should be installed and other technical

18   information that would bear on the question of

19   infringement.

20       And so, yes, I agree with you that other aspects or

21   other documents may be responsive to this and certainly

22   come into play with some of the other claims, but the

23   documents concerning the agreement are likely also to

24   contain information that is relevant to infringement.

25       THE COURT:  All right.  So, Mr. Sugden, have you

1    all agreed to produce the narrowed request:  "All

2    Documents and Communications evidencing, regarding,

3    reflecting, or relating to any agreement between You and

4    Gondola and/or Modiin relating to deployment or

5    installation of the Accused Products at any site operated

6    by Gondola and/or Modiin"?

7         MR. SUGDEN:  Bear with me, Your Honor, I am

8    re-reading that as you were reading it.

9         Our objection remains what Your Honor has

10   identified, is that this seems to be going towards

11   tortious interference and not towards what the Court needs

12   to decide with regard to infringement.

13        THE COURT:  Ms. DeBrow's argument is that some of

14   the agreements may include parameters of how to set up

15   these systems that may pertain to the limitations of the

16   patents-in-suit.

17        So putting aside whether or not there are other

18   documents or communications that may underlie, for

19   instance, the negotiations between these entities, what is

20   the objection to producing the documents or communications

21   relating to the agreement arising from the deployment or

22   information of the accused products?

23        MR. SUGDEN:  We have no objection to producing the

24   agreement, itself, if that is what is going to contain the

25   specifications, we can produce that agreement.

1          THE COURT:  But what about the communications

2     around the agreement, which could contain information

3     about how the system is going to be set up?

4          MR. SUGDEN:  If limited in that way, we can search

5     for those communications.

6          THE COURT:  All right.  Any objection to that,

7     plaintiff's counsel?

8          MS. DEBROW:  Your Honor, no, we don't object to

9     that scope.

10         THE COURT:  All right.  So, we will limit Request

11    for Production No. 4 to "All Documents and Communications

12    evidencing, reflecting, or relating to the agreement

13    between the defendant and Gondola and/or Modiin relating

14    to the deployment or installation --" I am going to say --

15    "or specifications of the deployment or installation of

16    the accused product at any site operated by Gondola and/or

17    Modiin."

18         Then, moving on to Request for Production No. 5,

19    Ms. DeBrow, do you have any additional arguments with

20    respect to Request for Production No. 5, because from my

21    perspective, you are getting what you need for the

22    preliminary injunction hearing with respect to Request for

23    Production No. 4?

24         MS. DEBROW:  Your Honor, Request for Production 5,

25    I agree with you, in the way that 4 has been modified in

1    terms of the specification of the system, we are getting a

2    lot of what we need.

3            There is one additional issue that Request for

4    Production 5 would cover that we set forth in the chart,

5    which is that one of the issues that will be relevant at

6    the PI hearing is causal nexus between the harm to Crusoe

7    and Alkane's infringement.  And to the extent that, you

8    know, any of these communications go to discussion of

9    Crusoe's systems, that might be separate from or a

10   precursor to justifying what is going to be set up at the

11   site.  If it is part of that same conversation between

12   these parties, it would be relevant to the causal nexus

13   element.

14           THE COURT:  So I guess I am struggling a little bit

15   on that.  That certainly might be true in terms of the

16   tortious interference claim.  I am having trouble, again,

17   understanding what the relevance of the causal nexus is

18   between the harm to Crusoe and Alkane vis-à-vis patent

19   infringement.

20           So isn't it true that once they meet the limitation

21   of the patents-in-suit, it doesn't matter what their

22   intent is, they infringe the patents-in-suit.  And as the

23   valid patentholder, as long as the patent is valid and

24   infringed, there is harm.  Whether or not there are

25   damages may be a different issue, but that is not

1    necessarily what we are looking at in terms of a

2    preliminary injunction to enjoin the acts of infringement,

3    is it?

4         MS. DEBROW:  Your Honor, I think that causal nexus

5    can have, you know, several different permutations.  But

6    your point is well taken.  And given the Court's view on

7    this one, I think that this is one that we would be

8    willing to set aside at this time.

9         THE COURT:  All right.  So we will set aside

10   Request for Production No. 5.  Again, this is not a

11   substantive ruling as to the propriety of that request in

12   the broader context of discovery.

13        Let's move to Request for Production No. 6:  "All

14   Documents and Communications between You and any third

15   party, including but not limited to Gondola and/or Modiin

16   regarding the Asserted Patents."  Again, I have concerns

17   about this as to the PI as opposed to its relevance to any

18   sort of willfulness or damages analysis.

19        So, Ms. DeBrow, if you want to address that, that

20   would be helpful.

21        MS. DEBROW:  Your Honor, the basis for the

22   propriety of this one is the same as RFP 5.  So given the

23   Court's views that you have already expressed on that one,

24   we would treat this one the same.

25        THE COURT:  All right.  So we will deem that one

1    withdrawn as of now.

2        RFP No. 7:  "All Documents and Communications

3    evidencing, regarding, reflecting, or relating to the

4    Accused Product's use or employment of natural gas to

5    generate electricity."

6        It seems, Mr. Sugden, that your concern about the

7    tailoring of it as "overbroad" and "not tailored to the

8    PI," isn't the plaintiff, with respect to this RFP, simply

9    seeking to capture documents or communications that

10    reflect how the system is used and the role of the natural

11    gas or the capturing of the natural gas flare to generate

12    electricity?

13        MR. SUGDEN:  Your Honor, we have resolved RFP 7.

14    The shading is what we used to try to indicate that.  So

15    kind of upon further reflection, I think I agree with your

16    analysis.  And I do think even RFP 7 is probably captured

17    within other RFPs that were not objected to.

18        THE COURT:  All right.  So we will allow RFP 7.

19        And then I believe that the next one we get to is

20    RFP 8, where there is an objection to the word "used" as

21    being ambiguous.  Crusoe has proposed a narrowing.  So let

22    me understand if you all still have an issue with respect

23    to RFP 8.

24        MR. SUGDEN:  This is Ryan Sugden, Your Honor.  We

25    do, because the ambiguity arises from the fact that Alkane

1    doesn't conduct the computing activity; the powering --

2    the mining for cryptocurrency, third parties do that.  So

3    the information that is being sought is how do third

4    parties use the electricity that Alkane provides to them?

5    It is information not within or custody or control.

6         We can deal with that in terms of responding in

7    such manner, but we thought it was more appropriate to

8    raise that with respect to this objection, raising it now.

9         THE COURT:  Ms. DeBrow?

10        MS. DEBROW:  Your Honor, this is the first that I

11   am hearing that that is the basis of the objection, and

12   so, you know, I think that simply saying that you are

13   unlikely to have sort of the full picture in terms of

14   responsive information for this RFP is not a basis to say

15   that you shouldn't be obligated to look for what documents

16   you have and respond.

17        And, you know, this is squarely directed to how the

18   accused products operate in relation to the technical

19   aspects that are required by the claim.  And so it goes

20   directly to the question of infringement.  And if it turns

21   out that Alkane has no documents that relate to this

22   issue, then that is what their response will be.  But I

23   don't think that speculating that they are not likely to

24   have documents should absolve the obligation to

25   investigate that.

1          THE COURT:  So I am going to require RFP 8 in its

2     narrowed form, which is in Crusoe's column, which reads:

3     "Documents sufficient to show how electricity generated by

4     the Accused Products is used to power computing equipment,

5     including but not limited to computing equipment used to

6     conduct financial transactions and/or mine for

7     cryptocurrency."

8          Again, under the Federal Rule of Civil Procedure,

9     any party is only obligated to produce what is within its

10    custody or control.  "Custody and control" has been well

11    described in the case law, and so I would suspect that you

12    all can get to that information fairly soon and,

13    obviously, are not required to necessarily do your own

14    discovery of third parties, but are required to produce

15    what is in your custody and control.

16          Looks like you all have resolved Request for

17    Production No. 9.

18          I am assuming that you all, since you have shaded

19    Request for Admission No. 2, have come to an agreement on

20    that; is that right?

21          MS. DEBROW:  That is my understanding, Your Honor.

22          MR. SUGDEN:  This is Ryan Sugden.  Yes, it is.

23          THE COURT: All right.  Deposition Topic No. 3,

24    consistent with the Court's other rulings, I am going to

25    limit this to Surprise 4 Pad and then the Tioga, North

1    Dakota, site at this point.

2         Now, let me be clear, you are seeking some

3    additional information through discovery, Ms. DeBrow.  And

4    so to the extent that you need to come back to the Court

5    with respect to Deposition Topic No. 3, and you have a

6    good-faith basis to do so and it is articulated with

7    specificity, I may leave Topic No. 3 open.

8         I am assuming that you all are proceeding with

9    written discovery before you proceed with these

10   depositions, but given the fact that this is all

11   expedited, I am not sure.  But, again, what I am going to

12   do is first limit it to these two locations we have

13   discussed, with the caveat that if discovery yields some

14   basis for some other sites, you all can meet and confer

15   about that, and then we can take it up if there is a

16   disagreement.

17        Does that make sense to everybody?

18        MS. DEBROW:  Yes, understood, Your Honor.

19        THE COURT:  All right.  Then Depo Topic No. 5:

20   "Knowledge of Documents and Communications between You and

21   any third party, including but not limited to Gondola

22   and/or Modiin, regarding Crusoe."  Is this taken care of

23   by my prior rulings, or do we still need to talk about

24   this?

25        MS. DEBROW:  Your Honor, these deposition topics

1    are mirrors of RFP 5 and 6.  So I believe your rulings on

2    those would apply to these topics.

3            THE COURT:  So we won't proceed with Topic No. 5 at

4    this juncture.

5            Topic No. 6 I think is also taken care of.

6            Topic No. 9 looks like it has been withdrawn.

7            And then Topic No. 10:  "Knowledge of the pricing

8    and/or cost of Alkane's flare gas mitigation services."

9    So, again, my concern about this is its relation to the

10   preliminary injunction as opposed to, obviously, its

11   relevance to other issues in the broader case.

12           Is this a topic that you all are still seeking to

13   pursue in the context of getting ready for the preliminary

14   injunction hearing?

15           MS. DEBROW:  Your Honor, we believe that the topic

16   is relevant to the irreparable harms, but appreciating,

17   you know, Your Honor's guidance on the issues that the

18   Court will be focused on, and specifically related to

19   infringement, if you -- if it is your position, with the

20   others, that this one does not go squarely to the issues

21   you are interested in for the preliminary injunction

22   hearing, we would be willing to withdraw that for the time

23   being.

24           THE COURT:  All right.  So my -- so I will just

25   give you some guidance with respect to irreparable harm.

1    My understanding is when I am looking at irreparable harm,

2    I am looking at harm that can't be, again, resolved

3    through damages; either lost profits or reasonable

4    royalties later on, in terms of patent infringement.

5        I don't see that the pricing information at this

6    juncture is particularly relevant to my assessment that

7    there will be irreparable harm as opposed to any

8    assessments later in the case about damages, again,

9    through reasonable royalties or lost profits.  So I am not

10   going to permit that at this time.

11       Again, to the extent that this develops differently

12   as you are taking this preliminary discovery and you need

13   me to revisit this deposition topic, you should meet and

14   confer, and I am willing to revisit it.  I just don't see

15   how the pricing at this point goes to what my analysis is

16   limited to in terms of irreparable harm.  All right.

17       MS. DEBROW:  Understood, Your Honor.

18       THE COURT:  Okay.  And then lastly it looks like,

19   although it is not shaded, that Crusoe has withdrawn any

20   request to depose fact witnesses outside of perhaps a

21   30(b)(6).  I guess the question really is, is that -- I am

22   not sure what the dispute actually is.  It seems like

23   Crusoe wants to limit those fact witness depositions to

24   the topics we talked about, and then Alkane has a general

25   objection to fact witness depositions.

 1          MR. GOVETT:  Your Honor, it is Brett Govett.  At

 2     the time that these papers were filed, we didn't know who

 3     the fact witnesses were going to be.  We could guess.  But

 4     since that time, Mr. Woods and Mr. Blavey have filed

 5     declarations on some of the issues in dispute.  Probably

 6     one or both of them will be the 30(b)(6) witnesses, but we

 7     would like to depose the two deponents that put

 8     declarations in for the TRO opposition, as I am sure you

 9     can appreciate.

10          THE COURT:  That seems reasonable to me.  Any

11     objection?

12          MR. SUGDEN:  Your Honor, will the depositions be

13     limited to the contents of the declarations?  The concern

14     with this objection here, as laid out in our response to

15     the Motion for Expedited Discovery, is that we are using

16     every single discovery tool at our disposal, in an

17     expedited fashion, in a very short period of time.  And

18     the case law in this District has indicated that early

19     witness depositions are something to be cautious about

20     because the witnesses don't have an opportunity, counsel

21     doesn't have an opportunity, to have discovered all of the

22     facts in the case yet.

23          So if they are limited to their declarations, I

24     think that would be one thing, as opposed to just broad

25     facts depositions.

1          THE COURT:  Mr. Govett?

2          MR. GOVETT:  It is hard to say.  We are going to

3    dispose them about the facts at issue.  We have the

4    Court's guidance on what you want to hear with respect to

5    the preliminary injunction hearing.  To say that they are

6    limited to what is in the declarations, then we wouldn't

7    need the deposition.  But we will be deposing them on the

8    facts that are at issue in the case that they have

9    discussed in their declarations and that we have pleadings

10   on.

11         So I hope that responds to your question, Your

12   Honor.  But to say that we, oh, we are going to limit it

13   to the declarations.  No.  If that were they case, we

14   wouldn't need the depositions.  I hope that answers your

15   questions, Your Honor.

16         THE COURT:  Well, let me ask you this.  Are you

17   planning on one day of 7 hours?

18         MR. GOVETT:  No.  No. We put in our papers that any

19   deposition we took would be a short deposition.  We

20   propose 3 hours.  And, you know, if we use if all, great.

21   If we don't, we won't.  But we don't have any reason to

22   get in there and just waste time.  We are going to get in,

23   cut to the chase, and get on with it.

24         THE COURT:  Well, I appreciate that.  In my own

25   experience, when attorneys are given a certain amount of

1    time to take depositions, few are the attorneys that

2    finish before that time is up.

3         Mr. Sugden, with the limitation of one day of 3

4    hours for two fact witnesses, any objection to that?

5         MR. SUGDEN:  Your Honor, I think the 30(b)(6)

6    depositions would be sufficient.  And we haven't discussed

7    the length -- a time limitation on that, but I believe

8    that one should be imposed on the 30(b)(6).  But I do

9    believe the 30(b)(6) would be sufficient for the Court to

10   have adequate information for the parties to be prepared

11   for the preliminary injunction hearing.

12        THE COURT:  All right.  Let me take a better look.

13        MR. GOVETT:  May I respond on that, please, Your

14   Honor?

15        THE COURT:  Go ahead, Mr. Govett.

16        MR. GOVETT:  The only thing is they can't have it

17   both ways.  They can't offer evidence from a declarant and

18   then say, oh, you can't depose the declarant.  That's the

19   issue on that.  So if they want to withdraw some of that,

20   we can consider that.  But the cat's out of the bag, so to

21   speak, on -- you know, they put in declarations from both

22   of these people, one would think they would be more than

23   willing to offer them up for a deposition.

24        And, you know, I don't see how we can agree to any

25   sort of limitation about what is being asked of them.  You

1    know, we know the federal rules and we will follow them,

2    but that is kind of what happens when you put somebody up

3    for -- when you get them to sign a declaration under oath;

4    we are entitled to go in and question them about that.

5            THE COURT:  Well, I don't think there is a

6    question, if I am understanding defense counsel, about

7    whether or not you are able to inquire about what is in

8    the declaration and potentially why they say what they say

9    in the declaration.

10           I think the issue here is whether or not you are

11   permitted to have a more free ranging deposition; for

12   instance, to ask these individuals about pricing

13   information, which this Court does not necessarily believe

14   is relevant to the preliminary injunction or their

15   knowledge of the accused patents.

16           MR. GOVETT:  They address that, I believe, in their

17   declarations, as one of the issues, Your Honor, on the

18   knowledge point.

19           THE COURT:  All right.  So, again, let me take a

20   closer look at the declarations.  Given the fact that they

21   were filed earlier today, I have not had an opportunity to

22   look at those, and then in conjunction with a separate

23   minute order, I will make a ruling on the depositions, the

24   fact depositions.

25           MR. GOVETT:  Thank you, Your Honor.

 1           THE COURT:  All right.  Anything else with respect

 2    to the discovery requests as they stand now?

 3           MS. DEBROW:  Your Honor, this is Stephanie DeBrow.

 4    One other housekeeping issue, just so that the parties are

 5    all on the same page and not coming back to you for

 6    clarity, our understanding is that the interrogatories,

 7    our fees, and deposition topics that were not included in

 8    this dispute table submitted to the Court are issues that

 9    the plaintiff or the defendant has not objected to and so

10    plans to respond to.

11           And so I just want to make sure that the record

12    reflects that in addition to those discovery requests you

13    specifically ordered responses on today, that the ones

14    that have not been addressed in the table as disputed will

15    also be responded to, and those are Interogs 1, 3, 9

16    through 10, RFP 10, and Deposition Topics 1, 2, 4, 7, and

17    8.

18           THE COURT:  Well, that is certainly my expectation,

19    Ms. DeBrow, but why don't I get confirmation from

20    Mr. Sugden.

21           MR. SUGDEN:  This is Ryan Sugden.  We will respond,

22    Your Honor.  Correct.

23           THE COURT:  Okay.  So pending before the Court is

24    the Motion to Expedite Discovery, Docket Entry No. 11.

25    The Motion is granted in part and denied in part

  1    consistent with the rulings on the record today and the

  2    instructions to the parties with respect to all disputed

  3    issues except for the issue of fact witnesses.

  4         The Court will review the declarations submitted

  5    and then issue a separate minute order addressing the

  6    availability of a fact witness deposition in addition to

  7    the Court's assumption that a Rule 30(b)(6) deposition

  8    will move forward, as tailored by the topics that we

  9    discussed today.

 10         Now let's talk about the schedule for briefing.

 11         MR. SUGDEN:  Your Honor, this is Ryan Sugden.  May

 12    I interject?  I do have two issues on the motions that we

 13    would just like some clarity on and potentially a ruling.

 14         THE COURT:  All right.

 15         MR. SUGDEN:  One of those issues is the timing of

 16    our responses.  We would like at least 21 days to respond

 17    to written discovery, and for depositions to not begin for

 18    35 days.  That is a part of the schedule discussions,

 19    happy to have it then.

 20         The second issue that we raised in our Response to

 21    the Motion for Expedited Discovery was that Alkane would,

 22    likewise, be able to propound discovery in the same manner

 23    that Crusoe has been permitted.

 24         THE COURT:  So this ruling is not intended to

 25    preclude Alkane from propounding its own expedited

1    discovery.  However, the only reason that we have been

2    able to move so quickly forward with Crusoe's request is

3    because the Court has the specific requests in front of

4    me.

5         So it doesn't really help, Mr. Sugden, for me to

6    make any preemptive determinations as to what will or not

7    be permitted.  You all are certainly free to serve those

8    discovery requests.  And then to the extent that there are

9    objections, we will engage in a very similar process as we

10   did today.

11        My rulings today were in no way to suggest that the

12   defendant was precluded from seeking any sort of

13   discovery, particularly given the fact that one of the

14   elements that the Court will consider is whether or not

15   there has been any substantial showing of invalidity of

16   these patents or the claims asserted.

17        And so, again, you all obviously need to proceed

18   how you see fit, but it is most helpful for me to actually

19   be working with actual requests and actual objections.

20        MR. SUGDEN:  Understood, Your Honor.

21        THE COURT:  All right.  So then let's talk about

22   the timing.  Last time you all were in front of me, we

23   were working from a notice of the parties' proposals

24   regarding briefing and a hearing schedule for Crusoe's

25   Motion for Temporary Restraining Order and/or Preliminary

1    Injunction.

2         The concern voiced by the plaintiff -- or, I am

3    sorry, the defendant at that time was that the scope of

4    discovery was such that it would be difficult to comply

5    with the proposals that the plaintiff sought with respect

6    to the discovery.

7         We have now narrowed written discovery, and it is

8    September 8th, so my sense is that even if you need 21

9    days to respond, that would still get us to about

10   September 30th and October 7th for depositions.  My caveat

11   to that, though, is again based on my own trial schedule

12   in November and early December.  It may be challenging to

13   get you all to a preliminary injunction hearing by that

14   time.

15        Given that, would it then mean that it would be

16   more beneficial to give you all a little bit more time,

17   particularly in light of our last conversation with

18   respect to Alkane serving discovery and the potential that

19   Crusoe might object to the scope of some of the requests?

20        MR. GOVETT:  Your Honor, this is Brett Govett.  I

21   think that obviously we would like the hearing to be as

22   soon as possible, but I understand the Court's

23   restrictions, and I appreciate the time that you have

24   spent on this today, as well.

25        Perhaps the most expeditious way to get through

1    this is, you are the Judge, you just tell us, here is the

2    first date I can give you a hearing and, you know, this is

3    the date, and based on that date you go work out the

4    discovery, similar to what we would do in a, you know,

5    normal case where we had a trial date, wanting a date, all

6    of that sort of thing, and we filled in the dates around

7    it, and if there is a dispute, come and tell me, in terms

8    of timing.

9         But I think that realistically we are very

10   reasonable.  If, you know, if the hearing is not going to

11   be until X date, as long as there is time for briefing and

12   so forth, exhibits, you know, to get the Court what it

13   needs to make an informed decision on the preliminary

14   injunction hearing, we want to do what is the easiest and

15   what is best for the Court, and we have to understand and

16   appreciate the Court's restrictions.  I think that is

17   really going to be the easiest way to get through all of

18   it.

19        THE COURT:  So remind you, did you all think you

20   needed two days for the evidentiary hearing or one?

21        MR. GOVETT:  We said one day, the defendant said

22   two days.  Given the limitations and everything that we

23   just went through, I would be hopeful that everybody

24   understands -- there is no reason we couldn't get through

25   this in a single day given the briefing and so forth.

 1    That is our position on it.

 2         THE COURT:  All right.  Mr. Sugden?

 3         MR. SUGDEN:  Your Honor, I am still cautious about

 4    only scheduling a one-day hearing and not having a

 5    scheduled second day hearing that we could dispense with

 6    if we didn't need it.  We are talking about, they want to

 7    depose at lease two fact witnesses.  There is an expert.

 8    So we are talking potentially six witnesses with two

 9    experts and argument in addition.  That just feels to me

10    like asking for trouble if we only schedule one day.

11         THE COURT:  All right.  So what I am going do is in

12    conjunction with the minutes of this proceeding, I will

13    identify a few two-day openings on my calendar.  I want to

14    go back and look at my docket holistically given the fact

15    that I have a number of trials coming up this fall and

16    through the winter.  I will give you some options, and you

17    can then call into my chambers and tell them which option

18    you would like, and then we will get you slated in.

19         Does that make sense to everyone?

20         MR. GOVETT:  This is Brett Govett.  Yes, Your

21    Honor.

22         MR. SUGDEN:  This is Ryan Sugden.  Yes, definitely.

23         THE COURT:  All right.  So then after you pick

24    those dates, then you all can move backward.  It is

25    helpful for me for you then to file a stipulation about

1    the deadlines.  And then if you cannot stipulate to the

2    deadlines in the interim, such as when you are going to

3    close the discovery, depositions, and finish briefing,

4    then we can take it up then.

5          Just note that, again, given the fact that you are

6    going to be competing with various other trials of cases

7    that I have not lived with very long, the more time that I

8    have with these papers, the better.  Obviously I have some

9    experience with patent litigation, but these are not

10   patents that I've had a lot of time with, and I want to

11   make sure that we are using our time as efficiently as

12   possible during the preliminary injunction hearing, okay.

13         MR. GOVETT:  Yes, Your Honor.

14         THE COURT:  All right.  Anything else that would be

15   helpful today, counsel?

16         MR. GOVETT:  From the plaintiff's side, no, Your

17   Honor, I don't believe so.  Thank you for your time and

18   all of your prep on this, and that of your staff, of

19   course.

20         MR. SUGDEN:  For defendant, we have nothing

21   further.  Thank you, Your Honor.

22         THE COURT:  All right.  Thank you so much.  We will

23   be in recess.

24         (Proceedings conclude at 2:47 p.m.)

25

# R E P O R T E R ' S   C E R T I F I C A T E

I, Darlene M. Martinez, Official Certified Shorthand Reporter for the United States District Court, District of Colorado, do hereby certify that the foregoing is a true and accurate transcript of the proceedings had as taken stenographically by me at the time and place aforementioned.

Dated this <u>20th</u> day of <u>September</u>, 2022.

_____
s/Darlene M. Martinez
RMR, CRR