**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:22-cv-02142-NYW

CRUSOE ENERGY SYSTEMS LLC, a Delaware limited liability company,

    Plaintiff,

  v.

ALKANE MIDSTREAM LLC, a Delaware limited liability company,

    Defendant.

**ALKANE MIDSTREAM LLC'S PROPOSED SUR-REPLY TO CRUSOE ENERGY SYSTEMS LLC'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Crusoe's Reply improperly attempts to shift the burden of showing the likelihood of success, makes conclusory technical arguments that are contrary to the state of technology, and mischaracterizes legal precedent.

**I.  Crusoe Improperly Attempts to Shift the Burden of Establishing/Disproving Infringement to Alkane**

Each of the Asserted Claims require an electric power generation system, including an "electrical transformation module" (i.e. a transformer) to transform "the combined high-voltage electrical output [following the parallel panels] into a low-voltage electrical output." Crusoe was unable to identify a transformer or any equivalent components in the photograph that it relied on to demonstrate the presence of other limitations (ECF Nos. 9-3 at 1(f); 9-4 at 1(e); 28-2 at pp. 95-97 (claim 1(f))) and instead chose to infer the use of a transformer. Alkane raised a substantial defense to infringement in asserting that it does not use a transformer or any equivalent component.

1

Alkane's assertion that it does not use a transformer was supported by the declaration testimony of Mr. Woods—an engineer with first-hand knowledge. Crusoe has responded by arguing that the declaration testimony is "unsubstantiated" and insisting that "the overall system likely includes [a transformer] and Alkane has not pointed to any evidence to the contrary." ECF No. 42 at 4. In doing so Crusoe has effectively conceded that it cannot affirmatively establish the presence of a transformer as required by the claim limitations, but faults Alkane for apparently not meeting an arbitrary—and unsupported—evidentiary standard that Crusoe has decided Alkane must meet.

Crusoe carries the overall burden to show its likelihood of success on the merits. *Oakley, Inc. v. Sunglass Hut, Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). That burden never shifts. *Id*. In application, this means that once Alkane raised a "substantial question" concerning infringement, Crusoe was required to show that Alkane's defenses "lack[ed] substantial merit." *Genentech, Inc. v. Novo Nordisk*, A/S, 108 F.3d 1361, 1364 (Fed.Cir.1997).

Instead of showing that Alkane's defense lacks substantial merit, Crusoe urges that it should be Alkane's burden to demonstrate the absence of a transformer. While Alkane has in fact done so, it was never Alkane's burden. The Court should reject Crusoe's attempt to improperly shift its burden to Alkane.

## II. Crusoe and Its Expert Continue to Misrepresent the Necessity of a Transformer

Crusoe and its expert allege that "typical distributed computing devices are designed for input voltages no higher than about 240 VAC; thus an electrical transformation module would be necessary to transform the output voltage of Alkane's generators—which Alkane contends is 415

2

VAC—to an appropriate input voltage for the distributed computing components." ECF No. 43 at 4.  This is simply incorrect and contrary to the state of the technology.

While 480 VAC power must be transformed to a lower voltage in order to be compatible with data center loads, the same is not true for electricity distributed at 415 VAC.  Ex. 1 at 4.  As described in PROPER APPLICATION OF 415V SYSTEMS IN NORTH AMERICAN DATA CENTERS, Emerson Network Power (2010),[1] electricity distributed at 415 VAC is compatible with most data centers and distributing the electricity at this voltage eliminates the need for a transformer:

> There are a variety of factors driving the adoption of 415/240VAC distribution. First, distributing at these increased voltages enables overall efficiency to be enhanced by eliminating the need for a voltage transformation along the power path. **For example, in a 415V system, the L-N voltage is 240V, which is compatible with most all IT loads. By shifting the UPS output distribution voltage to 415/240 V three-phase (L-L/L-N), most of the existing servers today can be powered with 240V single-phase (L-N) without any intermediate transformation.  Removing the need for a transformer streamlines the power path and can increase efficiency approximately 1.5 percent.**

Ex. 1 at 4.

Crusoe's entire rebuttal to Alkane's defense that it neither uses, nor needs, "an electrical transformation module" is based off of an apparent ignorance as to the state of technology.

### III. Crusoe Misrepresents that the Fact Pattern of *Centillion* Meets the Present Fact Pattern

In an attempt to contort the facts to meet those of *Centillion Data Sys., LLC v. Qwest Communs. Int'l,* 631 F.3d 1279 (Fed. Cir. 2011), Crusoe has presented a new argument that Alkane's actions of generating and transmitting electricity "cause" the third-party customer's

---

[1] Available at https://www.missioncriticalmagazine.com/ext/resources/MC/Home/Files/PDFs/Emerson-Proper_Application.pdf.

distributed computing sub-system to function.  But unlike the "customer initiated demand for the service which causes the back-end system to generate the requisite reports" seen in *Centillion* (*id.* at 1285) (emphasis added), Crusoe has provided no evidence that the supplier initiated supply of electricity "causes"—as compared to merely permitting—its third-party customer's distributed computing sub-system to function.

Crusoe latches onto the incorrect portion of the *Centillion* decision.  The present fact pattern is much closer to that of the alleged "use" by Qwest (Section I.A.2 of the opinion).  Specifically, Qwest was found to have never used the entire system despite making the back-end processing elements and supplying software for its customers to install on their own personal computers. *Id.* at 1286-87.

## IV.   It Is Appropriate to Consider the Harm to Customers Under the Public Interest

Crusoe cites to *Douglas Dynamics, LLC v. Buyers Prods. Co*., 717 F.3d 1336 (Fed. Cir. 2013), as supporting that the public interest factor only considers the "general" public.  While *Douglas Dynamics* was addressing the general public, it provides no prohibition to also considering the harm to specific third parties that would be directly affected by the imposition of injunctive relief.  Other case law explicitly acknowledges that customers relying on an accused infringer or its services are indeed part of the "public" with respect to the public interest factor.  *4i Ltd. Partnership v. Microsoft Corp*., 598 F. 3d 831, 863 (Fed. Cir. 2010) (considering harm to existing users—including companies—in the context of whether to institute a permanent injunction following the conclusion of a full trial on the merits); *Broadcom Corp. v. Qualcomm Inc*., 543 F.3d 683, 703-04 (Fed.Cir.2008) (defining the "public" to include affected network

carriers and manufacturers in the context of whether to institute a permanent injunction following the conclusion of a full trial on the merits).

Contrary to the Crusoe's assertions, the harm to the Colorado Producers should weigh heavily against the imposition of a Temporary Restraining Order or preliminary injunction.

## V.    Conclusion

For these reasons and the reasons states in Alkane's Opposition to Crusoe's Motion for Temporary Restraining Order, the Court should deny Crusoe's Motion for a Temporary Restraining Order.

Respectfully submitted this 22nd day of September, 2022.

> s/ *John R. Schroeder*
> John R. Schroeder
> STINSON LLP
> 7700 Forsyth Boulevard, Suite 1100
> St. Louis, Missouri 63105
> Phone:  314.345.7023
> Fax No.: 314.863.9388
> Email: john.schroeder@stinson.com
>
> Ryan M. Sugden
> STINSON LLP
> 1144 Fifteenth St., Suite 2400
> Denver, Colorado 80202
> Phone:  303.376.8405
> Fax No.: 303.578.7985
> Email: ryan.sugden@stinson.com
>
> *Attorneys for Defendant Alkane Midstream LLC*