**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION**

| | | |
|---|---|---|
| CRUSOE ENERGY SYSTEMS LLC, | § § | |
| Plaintiff, | § § | Civil Action No. 1:22-CV-2142-NYW-STV |
| v. | § § | |
| ALKANE MIDSTREAM LLC, | § § | **HONORABLE JUDGE NINA Y. WANG** |
| Defendant. | § | **HONORABLE JUDGE SCOTT T. VARHOLAK** |

**<u>CRUSOE ENERGY SYSTEMS LLC'S MOTION TO DISMISS
ALKANE MIDSTREAM LLC'S COUNTERCLAIMS FIVE AND SIX
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

-i-

**TABLE OF CONTENTS**

                                                                                             **Page**

I. Introduction ............................................................................................................................. 1

II. Legal Standards ..................................................................................................................... 1

III. Argument ............................................................................................................................... 3

    A. Crusoe's Infringement Allegations Are Not "Objectively Baseless" as a Matter of Law .. 4

        1. Publicly Available Materials Confirm Crusoe Had Probable Cause to Sue Alkane for Infringement. ................................................................................................................... 5

        2. Crusoe's Withdrawal of its Motion for TRO and Preliminary Injunction is No Support That Crusoe's Allegations are "Objectively Baseless." .................................................. 8

    B. Crusoe Did Not Subjectively Intend to Harm Alkane Through Abuse of the Governmental Process. ........................................................................................................ 9

IV. Conclusion ........................................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*800 Adept, Inc. v. Murex Securities, Ltd.*,
   539 F.3d 1354 (Fed. Cir. 2008)..........................................................................................6

*Alkane Midstream LLC v. Barreto, et al.*,
   Case No. 08-2021-cv-01257 (Burleigh Cnty. Ct.).............................................................7

*Bristol Co. L.P. v. Bosch Rexroth Inc.*,
   758 F.Supp.2d 1172 (D. Colo. 2010)................................................................................10

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972)..........................................................................................................11

*Clearplay, Inc. v. Nissim Corp.*,
   2011 WL 3878363 (S.D. Fla. Sept. 2, 2011) .....................................................................7

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).....................................................................................2, 10

*CSMN Invs., LLC v. Cordillera Metro. Dist.*,
   956 F.3d 1276 (10th Cir. 2020) ......................................................................................2, 3

*FTC v. AbbVie Inc.*,
   976 F.3d 327 (3d Cir. 2020)................................................................................................3

*Industrial Models, Inc. v. SNF, Inc.*,
   716 Fed.Appx. 949 (Fed. Cir. 2017).............................................................................2, 11

*Lala v. Frampton*,
   2008 WL 4059874 (D. Colo. Aug. 28, 2008) ....................................................................2

*Miller v. Shell Oil Co.*,
   345 F.2d 891 (10th Cir. 1965) ............................................................................................1

*Otter Tail Power Co. v. U.S.*,
   410 U.S. 366 (1973)..........................................................................................................12

*Pers. Dept., Inc. v. Prof'l Staff Leasing Corp.*,
   297 Fed.Appx. 773 (10th Cir. 2008)...................................................................................2

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................................. 2, 3, 4, 7, 9, 10

*SSI Technologies, LLC v. Dongguan Zhengyan Electronic Mechanical LTD*,
    559 F.Supp.3d 821 (W.D. Wis. 2021) ................................................................................. 7

*Tyco Healthcare Group LP v. Mutual Pharmaceutical Co., Inc.*,
    762 F.3d 1338 (Fed. Cir. 2014) ............................................................................................ 2

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................................. 8

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1357 (2d ed. 1990) .......................................................................................................... 1, 2

## I. INTRODUCTION

Defendant Alkane Midstream LLC's ("Alkane") Counterclaims Five and Six purport to state claims for tortious interference with contract and tortious interference with prospective business advantage based on Crusoe's filing of the Complaint in this litigation. Dkt. 74 at ¶¶ 104-123. Both claims should be dismissed because Crusoe is immune from liability under the Petition Clause—a *Noerr-Pennington*-like immunity—and Alkane has not—and indeed cannot—demonstrate that the "sham litigation" exception to Petition Clause immunity applies. First, Crusoe Energy Systems LLC ("Crusoe") had probable cause to sue Alkane for patent infringement based on publicly available evidence, and thus its allegations are not "objectively baseless" as a matter of law. For this reason alone, Alkane fails to demonstrate that the "sham litigation" exception to Petition Clause immunity applies. Second, even if this Court were to determine Crusoe's infringement allegations are "objectively baseless," Alkane fails to demonstrate Crusoe has or had the requisite subjective intent to harm Alkane through abuse of a governmental process. As a result, Crusoe is immunized from liability for tortious interference under the Petition Clause, and Alkane's Counterclaims Five and Six should be dismissed.

## II. LEGAL STANDARDS

A complaint is subject to dismissal under Rule 12(b)(6) where the pleadings demonstrate the existence of an affirmative defense that bars the award of any remedy. *Miller v. Shell Oil Co.,* 345 F.2d 891, 893 (10th Cir. 1965); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990). In such cases, there is said to be "a built-in defense" to the claims, in turn making them "essentially self-defeating." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990). Privilege and immunity are

examples of built-in defenses that are properly considered on a motion to dismiss.  *Id*; *see also Lala v. Frampton,* 2008 WL 4059874, at *7 (D. Colo. Aug. 28, 2008) (dismissing claim on *Noerr-Pennington* grounds pursuant to Rule 12(b)(6)).

One such immunity is rooted in the *Noerr-Pennington* line of cases, under which "a person's act of petitioning the government is presumptively shielded from liability by the First Amendment against certain types of claims." *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1349 (Fed. Cir. 2014).  The Tenth Circuit has held that *Noerr-Pennington* may provide immunity from liability arising from a tortious interference claim. *See Pers. Dept., Inc. v. Prof'l Staff Leasing Corp.,* 297 Fed.Appx. 773, 778-79 (10th Cir. 2008); *see also Industrial Models, Inc. v. SNF, Inc.,* 716 Fed.Appx. 949, 956 n.5 (Fed. Cir. 2017) ("Although *Noerr-Pennington* arose in the antitrust context, courts have extended it to protect other claims, including common law tortious interference claims.").  However, "beyond antitrust situations[,]" the Tenth Circuit refers to the immunity "as Petition Clause immunity, reserving the name*, Noerr-Pennington*, for antitrust cases." *CSMN Invs., LLC v. Cordillera Metro. Dist.,* 956 F.3d 1276, 1283 (10th Cir. 2020).

Although "there is a recognized exception to [Petition Clause] immunity for 'sham litigation,'" a party seeking such an exception must overcome the presumption of immunity by demonstrating that the litigation "(1) is 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits' (the objective element), and (2) is motivated by a desire 'to interfere ***directly*** with the business relationships of a competitor' (the subjective element)." *Tyco Healthcare Group LP v. Mutual Pharmaceutical Co., Inc.,* 762 F.3d 1338, 1343 (Fed. Cir. 2014) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508

U.S. 49, 60-61 (1993)); *see also CSMN Investments,* 956 F.3d at 1286 ("we adopt *Professional Real Estate's* sham-petitioning test for determining whether conduct is a sham, such that it loses Petition Clause immunity."). Importantly, the subjective element is considered "[o]nly if" it is demonstrated that the "challenged litigation is objectively meritless[.]" *Prof'l Real Estate,* 508 U.S. at 60. Thus, this two-tiered inquiry "requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability." *Id.* at 61.

## III.   ARGUMENT

Alkane's Counterclaim Five for tortious interference with contract, Dkt. 74 at ¶¶ 104-116, and Counterclaim Six for tortious interference with prospective business advantage, Dkt. 74 at ¶¶ 117-123—which are premised on allegations that Crusoe's filing of the Complaint in this litigation amounts to tortious interference—should be dismissed because Crusoe is immune from liability under the Petition Clause. Although Alkane asserts this lawsuit is a "mere sham" and thus Crusoe's actions in instituting these proceedings are exempt from the Petition Clause's protection, Alkane has not shown that the "sham litigation" exception to Petition Clause immunity applies. Dkt. 74 at ¶¶ 114, 121 (citing *FTC v. AbbVie Inc.,* 976 F.3d 327, 360 (3d Cir. 2020)). Publicly available evidence confirms Crusoe had probable cause to institute legal proceedings for patent infringement against Alkane, and thus Crusoe's claims are not "objectively baseless" as a matter of law. This alone is sufficient for the Court to find Crusoe is entitled to Petition Clause immunity. *Prof'l Real Estate,* 508 U.S. at 60 (both the objective and subjective prongs must be met to demonstrate applicability of the "sham litigation" exception). Regardless, Alkane has not demonstrated that the subjective element of the "sham litigation" exception applies. Despite Alkane's contrary allegations, Crusoe's subjective intent in pursuing this litigation was to protect

its intellectual property rights and mitigate its damages resulting from Alkane's interference with its preexisting contract with Gondola Resources, LLC and Modiin Energy NPB, LLC ("Gondola/Modiin")—not to inflict collateral injuries on Alkane through abuse of a governmental process.

### A. Crusoe's Infringement Allegations Are Not "Objectively Baseless" as a Matter of Law.

Alkane's tortious interference counterclaims fail because the objective prong of the "sham litigation" exception has not been met.  Under the Supreme Court's decision in *Professional Real Estate,* a lawsuit is "objectively baseless" ***only if*** "no reasonable litigant could realistically expect success on the merits."  508 U.S. at 60.  In contrast, a determination by this Court that Crusoe had "probable cause to sue" compels the opposite conclusion.  *Id.* at 63 ("[A] proper probable cause determination irrefutably demonstrates that [a counterclaim] plaintiff has not proved the objective prong of the sham exception and that the [counterclaim] defendant is accordingly entitled to *Noerr* immunity.").  "Probable cause to institute civil proceedings requires no more than a reasonable belie[f] that there is a chance that [a] claim may be held valid upon adjudication[.]"  *Id.* at 62-63 (internal citations and quotation marks omitted).  When "there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law." *Id.* at 63.

As detailed below, the evidence cited in Crusoe's pleadings (including its Complaint, Dkt. 1, Amended Complaint, Dkt. 27, and Second Amended Complaint, Dkt. 69), as well as other publicly available materials, conclusively demonstrates Crusoe had probable cause to institute legal proceedings for patent infringement against Alkane.  Further, to the extent Alkane is alleging Crusoe's withdrawal of its Emergency Motion for a Temporary Restraining Order and Preliminary

Injunction ("Motion for TRO and Preliminary Injunction"), Dkt. 9, somehow indicates that Crusoe's infringement allegations are "objectively baseless," that argument is fundamentally flawed for the reasons explained below.

### 1. *Publicly Available Materials Confirm Crusoe Had Probable Cause to Sue Alkane for Infringement.*

The evidence cited in Crusoe's pleadings, Dkt. 1; Dkt. 27; Dkt. 69, conclusively demonstrates it had probable cause to institute civil proceedings for patent infringement against Alkane—including seeking a TRO and preliminary injunctive relief—and thus that Crusoe's claims against Alkane are ***not*** "objectively baseless." Not the least of this evidence is the fact that, at a meeting on July 22, 2022, representatives of Crusoe were ***directly told*** by Alkane's Vice President, Ed Woods, that Alkane would be providing the same type of flare-mitigation services Crusoe had been contracted to provide at the Surprise 4 Pad. Dkt. 1 at ¶ 48; Dkt. 27 at ¶ 49; Dkt. 69 at ¶ 50; Dkt. 40-1 at ¶ 17. Mr. Woods' representations, coupled with publicly available materials detailing the features and functionality of the systems marketed and sold by Alkane, demonstrate that Crusoe had a reasonable belief Alkane was and/or is infringing the Asserted Patents.

For example, although Alkane now claims it could not infringe the Asserted Patents because it "did not own or operate" distributed computing systems at any well site, Dkt. 74 at ¶ 58, materials presented by Mr. Woods to the North Dakota Energy Development and Transmission Committee on October 6, 2020, indicate—at the very least—that Alkane marketed and/or promoted that its flare-gas mitigation systems include computing equipment used for "Financial

Transactions."[1]  *See* Dkt. 1-5, *Energy Development and Transition Committee Meeting Minutes* (Oct. 6, 2020), at app. D (slide 6).[2]  Similarly, a June 2020 Google Maps image captured the then-current setup of Alkane's flare-gas mitigation system at a site in Tioga, North Dakota,[3] which included a distributing computing system and mobile data centers housed in shipping containers, mirroring Crusoe's patented Digital Flare Mitigation® system.  *See* Dkt. 1-6 at Ex. B-C; Dkt. 27-09 at Exs. B-C; *cf.* Dkt. 9 at Ex. R.

Indeed, Crusoe's expert, Dr. Brun Hilbert, Ph.D., concluded—based on review of these materials—that Alkane's Flare Gas Management system infringed the asserted claims of the Asserted Patents.  *See* Dkt. 1-6 at Ex. B; Dkt. 27-09 at Ex. B.  Dr. Hilbert is a highly-educated and widely-published engineer with over forty (40) years of experience providing expertise in the oil and gas industry.  Dkt. 1-6 at Ex. A; Dkt. 27-9 at Ex. A.  Given Dr. Hilbert's credentials, Crusoe's reliance on his expert opinion that Alkane infringes the asserted claims of the Asserted Patents cannot be said to be unreasonable.  Numerous courts applying *Professional Real Estate's* "objectively baseless" standard have reached similar conclusions.  *See 800 Adept, Inc. v. Murex Securities, Ltd.,* 539 F.3d 1354, 1371 (Fed. Cir. 2008) (no objective baselessness as a matter of law when patentee's assertion of validity was supported by expert opinion and patent examiner);

---

[1]  The "Financial Transactions" represented cryptocurrency mining operations, as indicated by the Bitcoin symbol.

[2]  Both the minutes from the Committee's October 6, 2020 meeting and a copy of Mr. Woods' presentation are published on the North Dakota Legislative Branch's website.  *See id.* (available at:  https://ndlegis.gov/assembly/66-2019/interim/21-5181-03000-meeting-minutes.pdf) (last visited Nov. 25, 2022).

[3]  Crusoe originally believed the image to depict Alkane's operations in Seminole, Texas. However, Alkane's position is the image "actually depicts Alkane Midstream's operations in Tioga, North Dakota." Dkt. 36 at ¶ 18.  Crusoe assumes this to be true for the purposes of this Motion.

*SSI Technologies, LLC v. Dongguan Zhengyan Electronic Mechanical LTD,* 559 F.Supp.3d 821, 836 (W.D. Wis. 2021) (patentee's infringement position was not objectively baseless where it was supported by expert opinion, and expert opinion was not "plainly unreasonable"); *Clearplay, Inc. v. Nissim Corp.,* 2011 WL 3878363, at *13 (S.D. Fla. Sept. 2, 2011) (allegations of infringement not objectively baseless as a matter of law where premised on the opinions of the patentee's expert and counsel).

In addition, Alkane's President, Ryan Blazei, has made statements that further cast into doubt Alkane's representations in this litigation that it "does not supply, own, or operate data centers at any of the wellsites where it provides its services[,]" nor "have any interest" in doing so. Dkt. 37 at ¶ 17, *Declaration of Ryan Blazei.* For example, in connection with pending litigation in North Dakota state court, Mr. Blazei testified that "Alkane was building their own—our own bitcoin mining servers[.]" *See* Ex. A-1 at 36:11-12, *Alkane Midstream LLC v. Barreto, et al.,* Case No. 08-2021-cv-01257 (Burleigh Cnty. Ct.), *Excerpts from August 31, 2021 Hearing Transcript.* These statements underscore the fact that Crusoe's infringement allegations are ***not*** "objectively baseless" and highlight the necessity of fact discovery in this litigation to ferret out the full scope of Alkane's cryptocurrency mining operations.

The law merely requires Crusoe have a reasonable belief that there is "a chance" its infringement claims will be meritorious. *Prof'l Real Estate,* 508 U.S. at 62-63 ("Probable cause to institute civil proceedings requires no more than a reasonable belie[f] that there is a chance that [a] claim may be held valid upon adjudication") (internal citation and quotation marks omitted). The foregoing publicly available evidence—the contents of which Alkane cannot dispute—

conclusively demonstrates the reasonableness of Crusoe's belief there is "a chance" its infringement allegations will be meritorious.

### 2. *Crusoe's Withdrawal of its Motion for TRO and Preliminary Injunction is No Support That Crusoe's Allegations are "Objectively Baseless."*

Alkane attempts to assert that Crusoe's withdrawal of its Motion for TRO and Preliminary Injunction is further evidence Crusoe's infringement allegations are "meritless." *See e.g.,* Dkt. 74 at ¶¶ 113, 120. But that argument is fundamentally flawed in that it ignores the legal reasoning for emergency injunctive relief in the first instance.

In order to obtain preliminary injunctive relief, Crusoe was required to demonstrate not only that it is "likely to succeed on the merits" of its infringement claims, but also that it was likely to suffer imminent irreparable harm in the absence of preliminary relief. Dkt. 9 at 7 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Thus, Crusoe's request for injunctive relief was predicated not only on its argument that its infringement claims are meritorious, but also that it would suffer imminent irreparable harm due to Alkane's sale of the Accused Products to Gondola/Modiin. *See e.g.,* Dkt. 9 at 19 ("Crusoe's market share loss is not hypothetical, it is concrete; **Crusoe has already lost customers** due to Alkane's infringing product."); *see also* Ex. B at 12:10-17, *Excerpts from August 31, 2022 Hearing Transcript* (Judge Wang recognizing that the deployment of Alkane's Accused Products at the Surprise 4 Pad was a basis of Crusoe's Motion for emergency relief).

Crusoe's withdrawal of the Motion was based exclusively on the fact that Crusoe subsequently renegotiated its contract with Gondola/Modiin, which removed the likelihood of imminent irreparable harm caused by Alkane's sale of infringing products to Gondola/Modiin. *See* Dkt. 61. The renegotiation of Crusoe's contract with Gondola/Modiin, and thus Crusoe's

withdrawal of its Motion, has ***no bearing*** on whether Alkane's Accused Products previously infringed the Asserted Patents or will infringe at any point in the future. Indeed, the fact that Judge Wang did not simply deny Crusoe's Motion on the papers, and instead granted expedited discovery suggests she did not view Crusoe's infringement allegations as "objectively baseless" on their face. *See e.g.,* Ex. C at 16:2-6, *Excerpts from September 8, 2022 Hearing Transcript* ("this proceeding is very much focused on what kind of expedited discovery you all need to proceed to the preliminary injunction hearing, as well as setting briefing with respect to the preliminary injunction and the TRO.").

In sum, Crusoe's withdrawal of its Motion for TRO and Preliminary Injunction is evidence only that the exigent circumstances Crusoe believed warranted immediate injunctive relief are no longer present. Crusoe's withdrawal of its Motion has no bearing on whether Alkane did or did not infringe the Asserted Patents, or whether it will continue to do so in the future.

Thus, for all of the foregoing reasons, Crusoe's infringement allegations are not "objectively baseless," and, for that reason alone, Crusoe is immune from liability for Alkane's tortious interference counterclaims under the Petition Clause.

### B.   Crusoe Did Not Subjectively Intend to Harm Alkane Through Abuse of the Governmental Process.

Only if the Court determines that Crusoe's patent infringement allegations are "objectively baseless" does the "sham litigation" inquiry proceed to examining Crusoe's subjective intent. *Prof'l Real Estate,* 508 U.S. at 57, 60 ("[A]n objectively reasonable effort to litigate cannot be sham regardless of subjective intent."). Thus, as stated above, the fact that Crusoe's patent infringement allegations are not "objectively baseless" is in and of itself sufficient to establish Crusoe is immunized under the Petition Clause.

Nevertheless, should this Court deem it appropriate to proceed to the subjective prong of the "sham litigation" inquiry, Alkane has not shown that Crusoe "subjectively intended to harm [Alkane] through the abuse of a governmental process itself, as opposed to harms flowing from the outcome of that process." *Content Extraction,* 776 F.3d at 1350.  In an infringement action, indicia of such a subjective intent include "whether [the party] was indifferent to the outcome on the merits of the [] suit, whether any damages for infringement would be too low to justify [the party's] investment in the suit, or whether [the party] had decided to sue primarily for the benefit of collateral injuries inflicted through the use of the legal process." *Prof'l Real Estate,* 508 U.S. at 65.  Despite Alkane's conclusory allegations to the contrary, none of these criteria are present.

Alkane first asserts Crusoe "has no intent to ultimately resolve the merits of its patent infringement allegations against Alkane." Dkt. 74 at ¶ 110.  That allegation is contradicted by Crusoe's continued pursuit of its patent infringement claims, which demonstrates that Crusoe has a significant interest in resolving the merits of its claims.  As stated in Crusoe's pleadings, Crusoe has invested hundreds of millions of dollars in its intellectual property. Dkt. 1 at ¶ 36; Dkt. 27 at ¶ 37; Dkt. 69 at ¶ 38.  Thus, Crusoe wishes to see its intellectual property rights enforced, as well as avoid any potential arguments in the future that it has waived its intellectual property rights by failing to enforce the same.  *See e.g., Bristol Co. L.P. v. Bosch Rexroth Inc.,* 758 F.Supp.2d 1172, 1177 (D. Colo. 2010) (describing the equitable defense of laches, which "prevents a patentee who unreasonably sleeps on his rights from later seeking relief for infringement").  Indeed, Crusoe's retention of a highly-qualified expert to analyze the asserted claims of the Asserted Patents before filing its Original Complaint and Motion for TRO and Preliminary Injunction, *see supra* Part A.1, is a testament to its intent to litigate its infringement allegations on the merits.

For similar reasons, Alkane's conclusory allegation that Crusoe brought patent infringement claims against Alkane "with the motivation of causing the Colorado Producers to terminate the contract under which Alkane was to provide flare mitigation services at the Colorado Well Pad" is illogically circular. Dkt. 74 at ¶ 109. Crusoe filed suit against Alkane because ***Alkane's actions*** caused Gondola/Modiin to terminate their contract with Crusoe, which ***preexisted*** Gondola/Modiin's contract with Alkane. *See e.g.,* Dkt. 1 at ¶ 84; Dkt. 27 at ¶ 98; Dkt. 69 at ¶ 109 ("On information and belief, Alkane intentionally and by design induced the Colorado Producers to breach the Agreement with Crusoe and thereby usurp Crusoe as the provider of flare gas mitigation services at the Colorado Well Pad. Alkane's unlawful actions were the proximate cause of damage to Crusoe by causing the Colorado Producers to terminate the Agreement with Crusoe."). To the same end, Crusoe was trying to mitigate damages resulting from the cancellation of its original contract with Gondola/Modiin, and Crusoe was able to do so by negotiating a new (though less favorable) contract with Gondola/Modiin. Further, as Alkane acknowledges, Gondola/Modiin merely "modif[ied] their contract with Alkane"—they did not terminate it. Dkt. 74 at ¶¶ 113, 120. Accordingly, Alkane will still be permitted to "extract[] and monetize[] natural gas liquids ('NGLs')" at the Surprise 4 Pad despite the new contract between Gondola/Modiin and Crusoe. Dkt. 37 at ¶ 5.

"Moreover, unlike in other cases finding the sham litigation exception applicable," Crusoe has not "engage[d] in 'a pattern of baseless, repetitive claims.'" *Industrial Models, Inc. v. SNF, Inc.,* 716 Fed.Appx. 949, 956 (Fed. Cir. 2017) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 513 (1972)); *see also id.* at 512 (describing sham litigation as "massive, concerted, and purposeful activities of the group" to "harass and deter their competitors" from

access to the courts), *and Otter Tail Power Co. v. U.S.,* 410 U.S. 366, 380 (1973) (describing sham litigation as "evidenced by repetitive lawsuits carrying the hallmark of insubstantial claims."). Before the current litigation, Crusoe had never pursued patent infringement litigation—nor even threatened patent infringement litigation—against ***any*** party.  Accordingly, there is no basis on which to conclude Crusoe has engaged in a pattern of "baseless, repetitive claims" purely to "harass and deter" Alkane, nor any other potential competitor.

In sum, Crusoe has suffered significant damages as a result of Alkane's acts of infringement and has a legitimate interest in adjudicating its claims on the merits in order to recover the same, as well as to protect its intellectual property rights.  For these reasons, Alkane fails to demonstrate Crusoe possessed the requisite subjective intent to characterize this litigation as a "sham."

## IV. CONCLUSION

Alkane's Counterclaims Five and Six should be dismissed because Crusoe is immunized from liability under the Petition Clause, and the sham litigation exception does not apply.  First, Crusoe had probable cause to institute these legal proceedings for infringement against Alkane as a matter of law.  For this reason, Crusoe is immune from liability under the Petition Clause, regardless of its subjective intent in bringing its infringement claims.  Second, even if this Court believes it proper to inquire into Crusoe's subjective intent, there are no indicia Crusoe instituted these proceedings for the sole purpose of inflicting collateral injury on Alkane through abuse of a governmental process.  Rather, Crusoe has a significant interest in resolving its infringement claims on the merits and recouping its damages.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 30, 2022 | **NORTON ROSE FULBRIGHT US LLP**<br><br>*/s/ Brett C. Govett*<br>Brett C. Govett<br>brett.govett@nortonrosefulbright.com<br>Taylor Shields<br>taylor.shields@nortonrosefulbright.com<br>NORTON ROSE FULBRIGHT US LLP<br>2200 Ross Avenue, Suite 3600<br>Dallas, TX 75201-7932<br>Telephone:   (214) 855-8120<br>Facsimile:    (214) 855-8200<br><br>Stephanie DeBrow<br>stephanie.debrow@nortonrosefulbright.com<br>Daniel Shuminer<br>Colorado State Bar No. 53994<br>daniel.shumniner@nortonrosefulbright.com<br>NORTON ROSE FULBRIGHT US LLP<br>98 San Jacinto Boulevard, Suite 1100<br>Austin, Texas 78701<br>Telephone:   (512) 563-3094<br>Facsimile:    (512) 536-4598<br><br>*Attorneys for Plaintiff Crusoe Energy Systems LLC* |

**CERTIFICATE OF CONFERENCE - D.C.COLO.LCivR 7.1**

On November 30, 2022, Crusoe's counsel conferred with Alkane's counsel concerning this motion to dismiss. Alkane opposes the motion.

*/s/ Brett C. Govett*
Brett C. Govett

-13-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 30, 2022 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

/s/ *Brett C. Govett*
Brett C. Govett