IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:22-cv-02142-NYW

CRUSOE ENERGY SYSTEMS LLC, a Delaware limited liability company,

Plaintiff,

v.

ALKANE MIDSTREAM LLC, a Delaware limited liability company,

Defendant.

---

**ALKANE MIDSTREAM LLC'S RESPONSE TO [76] MOTION TO DISMISS COUNTERCLAIMS FIVE AND SIX**

---

## Table of Contents

**Page**


I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

III. ARGUMENT ..... 4

A. Crusoe's Infringement Allegations Are Objectively Baseless ..... 4

B. Crusoe Brought Its Infringement Allegations with the Intent of Using the Legal Process to Interfere with the Contractual Relationship Between Alkane and the Colorado Producers ..... 9

C. Resolution of Whether The "Sham" Litigation Exception to *Noerr-Pennington* Immunity Applies Requires Inquiry into Issues of Fact, Which Cannot Be Resolved in the Context of a Motion to Dismiss ..... 11

IV. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800 Adept, Inc. v. Murex Secs., Ltd.*,
539 F.3d 1354 (Fed. Cir. 2008)....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)....................9

*Clearplay, Inc. v. Nissim Corp.*,
2011 WL 3878363 (S.D. Fla. Sept. 2, 2011) ....................7

*Colo. Petroleum Marketers Ass'n v. Southland Corp.*,
476 F. Supp. 373 (D. Colo. 1979)....................9

*CSMN Invs., LLC v. Cordillera Metro. Dist.*,
956 F.3d 1276 (10th Cir. 2020) ....................3

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)....................3

*Edwards Vacuum, LLC v. Hoffman Inst. Supply, Inc.*,
556 F. Supp. 3d 1156 (D. Ore. 2021)....................8

*EON Corp. IP Holdings, LLC v. Landis+Gyr Inc.*,
Civ. Action No. 6:11-cv-00317-LED-JDL, 2013 WL 12040726 (E.D. Tex. May 17, 2013)....................13

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005) ....................8

*Gee v. Pacheco*,
627 F.3d 1178 (10th Cir. 2010) ....................5

*Hoffman-La Roche Inc. v Genpharm Inc.*,
50 F. Supp. 2d 367 (D.N.J. 1999)....................12

*Indus. Models, Inc. v. SNF, Inc.*,
716 Fed. Appx. 949 (Fed. Cir. 2017)....................3

*Judin v. US*,
110 F.3d 780 (Fed. Cir. 1997)....................8

*Nat'l Cash Register Corp. v. Arnett*,
554 F. Supp. 1176 (D. Colo. 1983)....................9

*OpenLCR.com, Inc. v. Rates Tech., Inc.*,
112 F. Supp. 2d 1223 (D. Colo. 2000)....................12

*Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc.*,
118 F. Supp. 3d 646 (D.N.J. 2015)....................12

*Pro. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)....................3, 4

*Rochester Drug Co-op., Inc. v. Braintree Labs.*,
712 F. Supp. 2d 308 (D. Del. 2010)....................3

*S3 Graphics Co., Ltd. v. ATI Techs. ULC*,
C.A. No. 11-1298, 2014 WL 573358 (D. Del. Feb. 11, 2014)....................12

*Sonus Networks, Inc. v. Inventergy, Inc.*,
No. C-15-0322, 2015 WL 4539814 (N.D. Cal. Jul. 27, 2015)....................13

*SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech., LTD*,
559 F. Supp. 3d 821 (W.D. Wis. 2021), appeal filed....................7

*Takeda Pharm. Co. Ltd. v. Zydus Pharms. (USA) Inc.*,
358 F. Supp. 3d 389 (D.N.J. 2018)....................12-13

*Teso LT, UAB v. Luminati Networks Ltd.*,
Civ. Action No. 2:20-CV-00073-JRG, 2020 WL 7364606 (E.D. Tex. Dec. 15, 2020)....................12

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004)....................8

*Ullery v. Bradley*,
949 F.3d 1282 (10th Cir. 2020)....................2

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965)....................3

*Weiland Sliding Doors & Windows, Inc., v. Panda Windows & Doors, LLC*,
No. 10CV677 JLS (AJB), 2010 WL 4392547 (S.D. Cal. Oct. 28, 2010)................................13

*In re Wellbutrin SR Antitrust Litigation*,
749 F. Supp. 2d 260 (E.D. Pen. 2010) ......................................................................... 8-9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................2

## I. INTRODUCTION

It is no secret that Crusoe's goal in this litigation was to unwind the loss of its contract with the Colorado Producers. To do so, Crusoe needed to disrupt the relationship between the Colorado Producers and Alkane. That is exactly what Crusoe has succeeded in doing.

Crusoe did not merely file a lawsuit asserting baseless patent infringement claims, it petitioned this Court for a Temporary Restraining Order and Preliminary Injunction.[1] It did so knowing that the Colorado Producers were reliant on Alkane to provide flare gas mitigation services and that the mere threat of a Temporary Restraining Order or Preliminary Injunction—regardless of the frivolousness of the request—would create an unacceptable cloud of uncertainty as to whether Alkane would be allowed to perform its contractual obligations. This is evident in that Crusoe began negotiating in earnest with the Colorado Produces to replace Alkane before its request for Temporary Restraining Order or Preliminary Injunction could be denied.

Crusoe now attempts to shield its nefarious interference in Alkane's contractual relationship with the Colorado Producers by invoking immunity under the *Noerr-Pennington* doctrine/Petition Clause. While the *Noerr-Pennington* doctrine/Petition Clause typically provides immunity to patent owners from liability for collateral harm caused to accused infringers as a result of seeking to enforce its patents, the immunity does not extend to "sham" litigations where its infringement claims are "objectively and subjectively baseless."

Alkane has pled more than enough factual allegations—which must be accepted as true for the purposes of a motion to dismiss—to establish the sham litigation exception to the *Noerr-*

[1] The Motion for Temporary Restraining Order and Preliminary Injunction were entirely premised on Crusoe's baseless patent infringement allegations.

*Pennington* doctrine/Petition Clause in the present case. Alkane's counterclaim has identified specific shortcomings with Crusoe's patent infringement allegations that render the infringement claims objectively baseless and alleges facts from which the Court can logically infer that Crusoe knew of or was willfully blind to these deficiencies. Alkane's counterclaim also alleges facts from which the Court can logically infer that Crusoe's subjective motivation in bringing the action and seeking a preliminary injunction was to use the legal process—more specifically, the threat of preliminary injunctive relief—to interfere with Alkane's business relationship with the Colorado Produces.

As the inquiry into whether Crusoe brought and maintained "objectively and subjectively baseless" infringement claims will ultimately turn on issues of reasonableness and intent, it is premature to determine the sufficiency of Crusoe's *Noerr-Pennington* doctrine/Petition Clause affirmative defense at the pleadings stage. Crusoe's Motion to Dismiss Counterclaims Five and Six should be denied.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss, a counterclaim must merely "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, all well-pled factual allegations within Alkane's counterclaims must be taken as true, and all "reasonable inferences" must be drawn in the light most favorable to Alkane. *Ullery v. Bradley*, 949 F.3d 1282, 1287 (10th Cir. 2020). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Crusoe's Motion to Dismiss Counterclaims Five and Six is predicated on its assertion of the Petition Clause immunity. As asserted by Crusoe, the Petition Clause immunity is rooted in and generally follows the *Noerr-Pennington* line of cases. *CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1283 (10th Cir. 2020) ("In this circuit, [the *Noerr-Pennington*] immunity extends beyond antitrust situations. But we refer to it as Petition Clause immunity, reserving the name, *Noerr-Pennington*, for antitrust cases.") (internal citation omitted). Under the *Noerr-Pennington* doctrine/Petition Clause, a patent owner has a presumptive immunity from tortious interference claims where the good faith assertion of its patent rights results in collateral injuries to the accused infringer. *See generally Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *see also Rochester Drug Co-op., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 316 (D. Del. 2010) (considering *Noerr-Pennington* immunity in the patent infringement context); *Indus. Models, Inc. v. SNF, Inc.*, 716 Fed. Appx. 949, 966 n.5 (Fed. Cir. 2017) ("Although *Noerr-Pennington* arose in the antitrust context, courts have extended it to protect other claims, including common law tortious interference claims.").

The immunity under the *Noerr-Pennington* doctrine/Petition Clause, however, is not absolute. A party is not entitled to immunity under the *Noerr-Pennington* doctrine/Petition Clause where its conduct falls within the "sham litigation" exception. *Pro. Real Estate Investors Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993). The "sham litigation" exception to *Noerr-Pennington* doctrine/Petition Clause immunity applies if the lawsuit is (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) "conceals 'an attempt to interfere directly with a competitor's business relationships

through the 'use [of] the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon.'" *Id.* (internal citations omitted) (emphasis in original).

## III. ARGUMENT

### A. Crusoe's Infringement Allegations Are Objectively Baseless

Even setting aside that the Asserted Patents are hopelessly invalid, Alkane has pled more than sufficient factual allegations that when taken as true would establish that Crusoe could never have reasonably expected to succeed in proving its patent infringement allegations:

- "Each of the patent claims asserted against Alkane requires a distributed computing system."
- "While there have been data centers (i.e. distributed computing systems) present at a handful of the Alkane well sites, Alkane did not own or operate these data centers. . . ."
- "Crusoe has failed to identify any evidence suggesting that Alkane has ever directed or controlled any third party as to the performance of the claim limitations pertaining to any distributed computing systems."
- "Because Alkane does not own, operate, direct the operation of, or control the operation of any distributed computing systems, Alkane does not infringe any of the patent claims asserted by Crusoe."
- "On information and belief, Crusoe knew or suspected that Alkane merely generated electricity at a customer specified voltage and sold it to third parties that owned and operated distributed computing systems when it filed its original complaint."
- "Even once Crusoe was put on notice that Alkane does not and has no intention of owning or operating any distributed computing systems, Crusoe unreasonably and unjustifiably maintained its Motion for a TRO and Preliminary Injunction. . . ."
- "Each of the patent claims asserted by Crusoe require an electric power generation system that includes an 'electrical transformation module' (i.e. a transformer) or a method step of 'transforming, by the power generation system, the high-voltage electrical output into a low-voltage electrical output.'"
- "Alkane's power generation configurations fail to meet 'electrical transformation module' or 'transforming' limitations on multiple levels."

- "Crusoe's initial claim charts presumed that Alkane generates electricity at 480VAC and delivers it at 210VAC. ECF 9-3 at 1(e); 9-4 at 1(d); 28-2 at ECF 24-2 at 90-93 (claim 1(d)). Crusoe had no legitimate basis for this presumption."

- "Alkane generates electricity at 415VAC and it remains at 415VAC through the delivery to its customers without the use of any electrical transformation module or need to transform the electricity."

- "Although Alkane's generator fleet is rated for 480VAC, anyone with familiarity with generators would recognize that Alkane's generator fleet is capable of having its output voltage adjusted to meet customer specifications without the need for an electrical transformation module or transforming the electricity."

- "Similarly, anyone with familiarity of mobile data centers used for cryptocurrency mining would recognize that a common configuration of mobile data centers receives electricity at 415VAC. . . ."

- "Crusoe's claim charts did not attempt to identify a transformer or any equivalent components in the photograph that it relied on to demonstrate the presence of other limitations. ECF Nos. 9-3 at 1(f); 9-4 at 1(e); 28-2 at pp. 95-97 (claim 1(f))."

- "Because Alkane does not use an electrical transformation module, or an equivalent thereof, to transform electricity from one voltage to a lower voltage, Alkane does not infringe any of the patent claims asserted by Crusoe."

- "On information and belief, Crusoe knew or suspected that Alkane did not use an electrical transformation module when it filed its original complaint."

- ". . . Further, despite being noticed several time that Alkane does not use an electrical transformation module Crusoe further amended its complaint to assert newly-issued patent claims that also required the use of a transformer."

- "Had Crusoe performed a reasonable pre-suit investigation it would have known that its allegations of patent infringement against Alkane are objectively baseless."

ECF 74 at ¶¶ 56, 57, 58, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76.

Relying substantially on disputed facts from outside of the pleadings of Alkane's Counterclaim,[2] Crusoe argues that publicly available evidence establishes it had probable cause to

[2] "Generally, the sufficiency of a [counterclaim] must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

institute legal proceedings. For example, Crusoe provides a handful of unpersuasive excuses as to why it believed that Alkane was operating or intending to operate a distributed computing system.

Crusoe asserts that its belief was based on a vague representation—"that Alkane would be providing the same type of flare-mitigation services Crusoe had been contracted to provide"—which was allegedly made by an Alkane representative during a July 22, 2022 meeting. While the July 22, 2022 meeting did happen, the parties are not in agreement as to the representations that were made at the meeting (*compare* ECF 69 (Second Amended Complaint) *with* ECF 74 (Answer to Second Amended Complaint) at ¶¶ 47-50), thus raising an apparent factual dispute that cannot be resolved on a motion to dismiss.

Crusoe also cites to materials presented to the North Dakota Development and Transmission Committee in October 2020. But these materials merely identify that cloud computing and indoor agriculture were options to include as part of the ecosystem. ECF 1-5 at 6-8. It is a question of fact as to whether a reasonable litigant would have jumped to the incorrect conclusion that Alkane was operating or intending to operate distributed computing system itself, especially when the same presentation depicted what were unquestionably third-party uses (including grain drying application, drill rigs, and water recycling) of the liquid natural gas (LNG) produced by Alkane at prior well sites. ECF 1-5 at 12, 15.

More importantly, the well-pled facts certainly support the inference that Crusoe knew or at the very least should have suspected that Alkane merely generated electricity and sold it to third-parties that owned and operated distributed computing systems. As specifically pled, "Alkane attempted to negotiate a solution with Crusoe in which Crusoe would use fuel gas processed and provided by Alkane to perform cryptocurrency mining at the Colorado Producer's well pad." ECF

74 at ¶ 53. The counterclaim also pled facts regarding Crusoe's industry knowledge and participation in industry forums and events. ECF 74 at ¶¶ 60-61. In other words, it is downright improbable that Crusoe would not have at least suspected that Alkane merely generated electricity at a customer specified voltage and sold it to third-parties that owned and operated distributed computing systems.

Alkane also alleges that Crusoe knew or suspected that Alkane did not use the requisite electrical transformation module. The fact that "Crusoe's claim charts did not attempt to identify a transformer or any equivalent components in the photograph that it relied on to demonstrate the presence of other limitations" supports this inference. ECF 74 at ¶ 73. Yes, Crusoe retained an expert to rubber stamp its claim charts, but Crusoe's purported reliance on its expert to demonstrate that it acted in good faith merely invites an inquiry into the expert's expertise,[3] thoroughness of investigation, and credibility. While Crusoe cites to *800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354 (Fed. Cir. 2008), *SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech., LTD*, 559 F. Supp. 3d 821 (W.D. Wis. 2021), appeal filed Oct. 12, 2021, and *Clearplay, Inc. v. Nissim Corp.*, No. 07-81170-CIV, 2011 WL 3878363 (S.D. Fla. Sept. 2, 2011), to suggest that merely retaining an expert demonstrates good faith, none of these cases were decided on a motion to dismiss prior to discovery.

Any reasonable litigant having performed a reasonable pre-suit investigation would have known that Crusoe's allegations of patent infringement against Alkane were objectively baseless. Notably, Crusoe never even made any inquiry to Alkane regarding the alleged infringement prior

[3] While Dr. Hilbert may be highly credentialed in the areas of well design and construction, Crusoe has not demonstrated that he has sufficient expertise in the fields of electrical power generation or distributed computing systems.

to filing its lawsuit and Motion for TRO and Preliminary Injunction. ECF 74 (Counterclaim) at ¶58; *see also Judin v. US*, 110 F.3d 780, 782, 784 (Fed. Cir. 1997) (finding a pre-filing investigation inadequate where the plaintiff merely observed the accused device from a distance and failed to request a sample or technical descriptions of the accused device from the accused infringer or its supplier). Instead, Crusoe's pre-suit investigation apparently consisted of examining one photograph from Google maps and clip art from a presentation handout. The only logical inference from Crusoe's lack of requesting information from Alkane is that Crusoe wanted to remain willfully blind to the gaping flaws in it allegations.

Notably, it was not just the filing of a lawsuit that was objectively baseless. Crusoe specifically petitioned this Court for a Temporary Restraining Order and Preliminary Injunction based on its meritless infringement allegations. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("A complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept."); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078-79 (9th Cir. 2004) (rejecting the suggestion that the sham litigation exception applies only where the entire litigation is baseless); *see also Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 556 F. Supp. 3d 1156, 1178-79 (D. Or. 2021) (permitting sham litigation exception to apply to a single ground within a mixed-claim case where other grounds within the litigation were not deemed baseless and applying it to discovery conduct in litigation); *In re Wellbutrin SR Antitrust Litigation*, 749 F. Supp. 2d 260, 263-67 (E.D. Pen. 2010) (finding that a sham litigation assertion could be maintained against a patent owner that asserted one sham and one non-sham patent infringement

claim where the assertion of the sham patent infringement claim "in and of itself, was sufficient to cause [competitive harm]"). Even once Crusoe was indisputably put on notice that Alkane did not own any distributed computing systems and did not use the requisite electrical transformation module, Crusoe continued to unreasonably and unjustifiably maintain its Motion for a TRO and Preliminary Injunction until it secured a new contract with the Colorado Producers. ECF 74 at ¶¶ 64, 74.

Crusoe has since withdrawn its Motion for a TRO and Preliminary Injunction. But, as Crusoe readily admits, the withdrawal of the Motion was based exclusively on successfully usurping the opportunity to provide flare mitigation services at the Colorado Well Pad from Alkane. ECF 76 at 8. Crusoe's withdrawal of it Motion for TRO and Preliminary Injunction only after achieving its nefarious objective does nothing to cure that the allegations of patent infringement were objectively baseless.[4]

**B. Crusoe Brought Its Infringement Allegations with the Intent of Using the Legal Process to Interfere with the Contractual Relationship Between Alkane and the Colorado Producers**

[4] Crusoe cites to *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972), to suggest that a pattern of baseless litigation should be required to prove that Crusoe's patent infringement claims were a sham. *See* ECF 76 at 11. *California Motors* does not stand for the proposition that a series of lawsuits are required to establish a sham litigation. *California Motors* "merely address[ed] the probative value" of having filed multiple lawsuits as evidence to support that the litigation was a sham. *Nat'l Cash Register Corp. v. Arnett*, 554 F. Supp. 1176, 1178 (D. Colo. 1983) ("[t]he number of sham lawsuits filed speaks to the weight of evidence to support the claimed anti-trust violation, not to its existence"); *Colo. Petroleum Marketers Ass'n v. Southland Corp.*, 476 F. Supp. 373, 378 (D. Colo. 1979) ("Logic is abused by the purported conclusion that in the absence of a series of such 'baseless' lawsuits, the purpose and intent supporting the institution of a civil action can never be the basis for invoking the 'sham litigation' exception to the *Noerr-Pennington* Doctrine.").

Regarding the second element of the sham litigation analysis, Alkane pled factual allegations sufficient to support an inference that Crusoe's motivation in asserting its infringement allegations was to use the legal process to interfere with the contractual relationship between Alkane and the Colorado Producers.

The well-pled facts allege that "Crusoe knew of multiple . . . entities [that] operated computing systems using electricity generated from natural gas at well pads." ECF 74 at ¶ 60. Crusoe even admits that it had at least limited knowledge regarding specific entities. ECF 77 at ¶ 60. Crusoe also admits that it has not filed a patent infringement suit against any party other than Alkane. ECF 74, ECF 77 at ¶ 62. Why the selective enforcement? Because the Colorado Producers picked Alkane to provide flare gas mitigation services and Crusoe—as the jilted suitor—wanted to unwind the loss of the contract with the Colorado Producers. ECF 74 at ¶ 64.

The well pled facts further allege that:

- "[o]n information and belief, Crusoe knew that the Colorado Producers were reliant on Alkane to manage the stranded natural gas so that it can fully carry out their oil-drilling and production operations;"
- "[o]n information and belief, Crusoe knew that a Motion for TRO and Preliminary Injunction would create uncertainty on the part of the Colorado Producers as to whether Alkane would be allowed to perform its obligations under the contract between Alkane and the Colorado Producers;" and
- "[o]n information and belief, Crusoe's intent in filing the present lawsuit and its Motion for TRO and Preliminary Injunction was to induce the Colorado Producers to terminate its contract with Alkane before the Motion for the Preliminary Injunction was resolved."

ECF 74 at ¶¶ 77, 78, 80. While these factual allegations are "on information and belief," they are based on natural and logical inferences in light of the fact that Crusoe had also negotiated to

provide flare gas mitigation to the Colorado Producers, and therefore would have been well aware of the Colorado Producers' needs. ECF 69 (Second Amended Complaint) at ¶ 40.

Crusoe unconvincingly argues that its continued pursuit of its patent infringement claims after having taken the threat of preliminary injunctive relief off the table demonstrates that Crusoe has significant interest in resolving the merits of its claims. But, Crusoe's continued maintenance of the lawsuit does not disprove Alkane's allegation "that Crusoe has no intent to ultimately resolve the merits of its patent infringement allegations against Alkane." ECF 74 at ¶ 110. As alleged in Alkane's counterclaim, Alkane is a significantly smaller entity than Crusoe. ECF 74 at ¶ 85. Accordingly, a reasonable inference is that "Crusoe intends to use its enormous advantage in size and capital to either force Alkane out of business or force Alkane to concede to a one-sided settlement in order to alleviate litigation expenses." ECF 74 at ¶ 87.

Alkane plausibly alleges that Crusoe's motive in asserting its patent infringement allegations were to use the mere threat of preliminary injunctive relief to disrupt the relationship between the Colorado Producers and Alkane, such that Crusoe could replace Alkane in providing flare gas mitigation at the Colorado Well Pad.[5]

### C. Resolution of Whether The "Sham" Litigation Exception to *Noerr-Pennington* Immunity Applies Requires Inquiry into Issues of Fact, Which Cannot Be Resolved in the Context of a Motion to Dismiss

The inquiry into whether Crusoe's infringement allegations in this action are "objectively and subjectively baseless" turns upon issues of reasonableness and intent—issues which are

[5] Although underdeveloped, Crusoe seemingly hints at an argument that the fact that the Colorado Producers modified—rather than terminated outright—its contract with Alkane demonstrates a lack of harm. To the contrary, Alkane lost a significant portion of its original contract and the imposition of the modified contractual terms was to Alkane's significant detriment.

premature to consider upon the present record. Given the factual findings required to assess the *Noerr–Pennington* doctrine/Petition Clause immunity and the sham litigation exceptions, courts routinely find it inappropriate to resolve the privilege in the context of a motion to dismiss prior to discovery. *OpenLCR.com, Inc. v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223, 1234 (D. Colo. 2000) (finding the question of whether the Petition Clause applies "is better resolved through a motion for summary judgment, with benefit of a more fully developed factual record"); *Otsuka Pharm. Co., Ltd. v. Torrent Pharms. Ltd., Inc.*, 118 F. Supp. 3d 646, 657 (D.N.J. 2015) (finding that whether the patent owner "undertook th[e] action for an improper and anticompetitive purpose, and whether a reasonable litigant could have realistically expected success on the merits . . . require[d an] inquiry into issues of fact, which cannot be resolved in the context of a motion to dismiss, and prior to discovery"); *S3 Graphics Co., Ltd. v. ATI Techs. ULC*, C.A. No. 11-1298, 2014 WL 573358, at *3 (D. Del. Feb. 11, 2014) (finding resolution of *Noerr-Pennington* immunity "not proper before discovery"); *Hoffman-La Roche Inc. v Genpharm Inc.*, 50 F. Supp. 2d 367, 380 (D.N.J. 1999) ("Reasonableness is a question of fact, and the Court cannot make such factual determinations on a factual controversy roiled by a motion to dismiss."); *Teso LT, UAB v. Luminati Networks Ltd.*, Civ. Action No. 2:20-CV-00073-JRG, 2020 WL 7364606, at *7 ( (E.D. Tex. Dec. 15, 2020)("[G]iven the underlying factual determinations necessary to decide whether the sham patent litigation exception applies, the Court finds it inappropriate to make that decision now."); *Takeda Pharm. Co. Ltd. v. Zydus Pharms. (USA) Inc.*, 358 F. Supp. 3d 389, 394–95 (D.N.J. 2018) ("[D]istrict courts within this Circuit have routinely prohibited parties from invoking the protections of *Noerr-Pennington* at the dismissal stage of a case in the context of patent suits, at which time the factual record remains undeveloped and insufficient for the purpose of determining

whether a 'sham litigation' has been filed.") (citations omitted); *Sonus Networks, Inc. v. Inventergy, Inc.*, No. C-15-0322, 2015 WL 4539814, at *2 (N.D. Cal. Jul. 27, 2015) ("Thus, courts rarely award *Noerr-Pennington* immunity at the motion to dismiss stage, where the Court must accept as true the non-moving party's well-pleaded allegations."); *EON Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, Civ. Action No. 6:11-cv-00317-LED-JDL, 2013 WL 12040726, at *5 (E.D. Tex. May 17, 2013) ("Here, the Court finds resolution of the applicability of *Noerr Pennington* doctrine inappropriate for a 12(b)(6) determination because of the significant disputed factual underpinnings necessary to determine whether a reasonable litigant could expect success on the merits, and whether Eon concealed an attempt to interfere with the business relations of a competitor."); *Weiland Sliding Doors & Windows, Inc., v. Panda Windows & Doors, LLC*, No. 10CV677 JLS (AJB), 2010 WL 4392547, at *6 (S.D. Cal. Oct. 28, 2010) ("Given the intense factual findings required to assess the *Noerr–Pennington* doctrine and its exceptions, the Court does not find it appropriate to resolve the privilege at this stage.").

## IV. CONCLUSION

Alkane has plausibly alleged facts sufficient to overcome Crusoe's presumptive immunity under the *Noerr–Pennington* doctrine/Petition Clause immunity, accordingly Crusoe's Motion to Dismiss Counterclaims Five and Six should be denied.

Respectfully submitted this 4th day of January, 2023.

s/ *John R. Schroeder*
John R. Schroeder
STINSON LLP
7700 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
Phone: 314.345.7023
Fax No.: 314.863.9388
Email: john.schroeder@stinson.com

Ryan M. Sugden
STINSON LLP
1144 Fifteenth St., Suite 2400
Denver, Colorado 80202
Phone: 303.376.8405
Fax No.: 303.578.7985
Email: ryan.sugden@stinson.com

*Attorneys for Defendant Alkane Midstream LLC*