**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION**

| | | |
|---|---|---|
| CRUSOE ENERGY SYSTEMS LLC, | § § | |
| Plaintiff, | § § | Civil Action No. 1:22-CV-2142-NYW-STV |
| v. | § § | |
| ALKANE MIDSTREAM LLC, | § § | **HONORABLE JUDGE NINA Y. WANG** |
| Defendant. | § | |
| | | **HONORABLE JUDGE SCOTT T. VARHOLAK** |

**CRUSOE ENERGY SYSTEMS LLC'S REPLY TO [85] ALKANE MIDSTREAM LLC'S RESPONSE TO [76] MOTION TO DISMISS COUNTERCLAIMS FIVE AND SIX UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

## TABLE OF CONTENTS

Page

I. **Alkane's Counterclaims Five and Six are Ripe for Dismissal.** ...................................... 1

II. **Alkane Fails to Meet Its Burden to Show Crusoe's Infringement Allegations Are "Objectively Baseless."** ........................................................................................................ 2

   A. Crusoe Had a Reasonable Belief That Alkane Owned and/or Operated Distributed Computing Systems. ............................................................................................ 3

   B. Crusoe Had Probable Cause to Believe Alkane's Accused Products Had the Requisite Electrical Transformation Module. ..................................................................... 7

III. **Alkane Fails to Meet Its Burden to Demonstrate Crusoe Had the Requisite Subjective Intent.** ............................................................................................................. 9

IV. **Conclusion** .............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 1

*BE & K Const. Co. v. N.L.R.B.*,
    536 U.S. 516 (2002) ................................................................................................... 1, 8

*Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*,
    956 F.Supp. 910 (D. Kan. 1997) .................................................................................... 2

*Content Extraction & Transmission LLC v. Wells Fargo*,
    776 F.3d 1343 (Fed. Cir. 2014) ..................................................................................... 9

*Crocs, Inc. v. Effervescent, Inc.*,
    248 F.Supp.3d 1040 (D. Colo. 2017) ............................................................................. 2

*CSMN Inv., LLC v. Cordillera Metro. Dist.*,
    956 F.3d 1276 (10th Cir. 2020) ..................................................................................... 2

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ....................................................................................... 1

*Judin v. U.S.*,
    110 F.3d 780 (Fed. Cir. 1997) ....................................................................................... 7

*Lala v. Frampton*,
    Civil Action No. 07-cv-02144-MSK-CBS, 2008 WL 4059874 (D. Colo. Aug.
    28, 2008) .................................................................................................................... 1, 2

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................................ 2, 3, 9

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) ..................................................................................... 8

*Tr. of Univ. of Penn. v. St. Jude Children's Research Hosp.*,
    940 F.Supp.2d 233 (E.D. Pa. 2013) ........................................................................... 2, 9

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ....................................................................................... 8

I.   **Alkane's Counterclaims Five and Six are Ripe for Dismissal.**

This Court should dismiss Alkane Midstream LLC's ("Alkane") Counterclaims Five and Six at the 12(b)(6) stage because Alkane has not met its burden to show this litigation is a "sham" by demonstrating (1) Crusoe Energy Systems LLC's ("Crusoe") infringement allegations are objectively baseless, and (2) Crusoe's institution of this litigation was motivated by a desire to directly interfere with Alkane's business relationships.

As Crusoe's "right to petition [is] one of the most precious of the liberties safeguarded by the Bill of Rights," Alkane carries the burden to demonstrate the "sham litigation" exception to Petition Clause immunity applies. *BE & K Const. Co. v. N.L.R.B.,* 536 U.S. 516, 524 (2002) (internal citation and quotation marks omitted); *Lala v. Frampton,* Civil Action No. 07-cv-02144-MSK-CBS, 2008 WL 4059874, at *6 (D. Colo. Aug. 28, 2008) ("Once the *Noerr-Pennington* doctrine is invoked by the Defendant[], the burden is on the Plaintiff to show that it does not apply."). Alkane's counterclaims do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citation omitted).

On the other hand, Crusoe has marshalled evidence that ***on its face*** demonstrates it had probable cause to sue Alkane for patent infringement. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002) (holding courts "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"). Alkane disputes that Crusoe interpreted this publicly available evidence correctly. However, the issue is not whether Alkane agrees with Crusoe's interpretation of the evidence, but whether Crusoe had "a reasonable belie[f]" based upon the evidence—the contents and

authenticity of which Alkane either does not or cannot dispute—"that there is a ***chance*** that [its] claim[s] may be held valid upon adjudication[.]" *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 62-63 (1993) (internal citation and quotation marks omitted) (emphasis added). In other words, "[h]ere, all facts relevant to the determination of *Noerr-Pennington* applicability are undisputed and contained within the record [the Court] may consider in deciding this motion to dismiss." *Tr. of Univ. of Penn. v. St. Jude Children's Research Hosp.,* 940 F.Supp.2d 233, 242-43 (E.D. Pa. 2013).

Further, while Alkane contends it would be "premature" for the Court to grant Crusoe's Motion to Dismiss at this early stage, *see* Dkt. 85 at 11-12, courts in this Circuit commonly dismiss claims based on the Petition Clause immunity at the 12(b)(6) stage when the plaintiff has failed to meet its burden to demonstrate the "sham litigation" exception applies. *See, e.g., Lala,* 2008 WL 4059874 at *7 (dismissing antitrust claim where sham exception to *Noerr-Pennington* did not apply); *CSMN Inv., LLC v. Cordillera Metro. Dist.,* 956 F.3d 1276, 1287-88 (10th Cir. 2020) (affirming dismissal where petitioning was objectively reasonable); *Crocs, Inc. v. Effervescent, Inc.,* 248 F.Supp.3d 1040, 1056 (D. Colo. 2017) (dismissing multiple counterclaims based on *Noerr-Pennington* immunity); *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.,* 956 F.Supp. 910, 919 (D. Kan. 1997) (dismissing antitrust claim based on *Noerr-Pennington* doctrine).

Consistent with these opinions, Alkane has not met its burden to demonstrate this litigation is a "sham," and its Counterclaims Five and Six should be dismissed.

II. **Alkane Fails to Meet Its Burden to Show Crusoe's Infringement Allegations Are "Objectively Baseless."**

Alkane argues Crusoe's infringement allegations are "objectively baseless" for two primary reasons: (1) "Crusoe knew or at the very least should have suspected that Alkane merely

generated electricity and sold it to third-parties that owned and operated distributed computing systems[,]" Dkt. 85 at 6, and (2) "Crusoe knew or suspected that Alkane did not use the requisite electrical transformation module." Dkt. 85 at 7. For the reasons detailed below, both arguments are without merit.

### A. Crusoe Had a Reasonable Belief That Alkane Owned and/or Operated Distributed Computing Systems.

The Court need not resolve at this stage whether Alkane *actually* owns or operates—either presently or in the past—a distributed computing system in order to find that Crusoe is immune from liability for tortious interference under the Petition Clause. It merely must conclude it was reasonable for Crusoe to believe Alkane did so. *See Prof'l Real Estate,* 508 U.S. at 62-63 ("Probable cause to institute civil proceedings requires no more than a 'reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication'") (internal citation omitted). Even assuming it is true that Alkane does not and has never owned and/or operated a distributed computing system, it is difficult to surmise how Crusoe could have reached the conclusion that third parties—rather than Alkane—owned and/or operated the distributed computing systems **present on Alkane's wellsites** at the time of filing its Original Complaint (Dkt. 1) and Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") (Dkt. 9).

For example, in its Motion to Dismiss, Crusoe first pointed to the fact that Alkane's Vice President, Mr. Ed Woods, represented at the July 22, 2022 meeting "that Alkane would be providing the same type of flare-mitigation services Crusoe had been contracted to provide at the Surprise 4 Pad." Dkt. 76 at 5 (citing Dkt. 1 at ¶ 48; Dkt. 27 at ¶ 49; Dkt. 69 at ¶ 50; Dkt. 40-1 at ¶ 12). Alkane counters "the parties are not in agreement as to the representations that were made at

the meeting[,]" Dkt. 85 at 6, but it does "admit[] indicating that stranded flare gas would potentially be used to power computing equipment used to perform cryptocurrency mining at the Colorado Well Pad[.]"  Dkt. 74 at ¶ 50.  While Alkane further "denies indicating that it would be the party owning or operating such computing equipment[,]" neither does Alkane argue—either in its Counterclaims or in Response to Crusoe's Motion to Dismiss—that it indicated a third party would be furnishing and/or operating the distributed computing equipment necessary to perform cryptocurrency mining.  *Id.*  Thus, in the absence of any indication to the contrary, it was reasonable for Crusoe to presume Alkane would be both powering and operating computing equipment used to perform cryptocurrency mining at the Surprise 4 Pad.

Similarly, Alkane's **own materials** are devoid of any express reference to third parties using the electricity generated by Alkane to power distributed computing systems.  Nevertheless, Alkane suggests Crusoe should have recognized that cloud computing was a third-party use of the LNG produced by Alkane since the October 2020 presentation on which Crusoe relies "depicted what were unquestionably third-party uses (including grain drying application, drill rigs, and water recycling) of the liquid natural gas (LNG) produced by Alkane at prior well sites."  Dkt. 85 at 6; *see also* Dkt. 76 at 5-6 (citing Dkt. 1-5, *Energy Dev. and Transition Comm. Meeting Minutes* (Oct. 6, 2020), at app. D (slide 6)).  But this is far from apparent.  A close inspection reveals the slide referencing "Water Recycling," for example, includes an image of equipment that appears to be marked with a third-party company's logo.  Dkt. 1-5 at app. D (slide 15).  On the other hand, the diagram including the reference to "Financial Transactions"[1] is unequivocally labeled "***Alkane***

---

[1] As stated in Crusoe's Motion to Dismiss, the "Financial Transactions" represented cryptocurrency mining operations, as indicated by the Bitcoin symbol.  Dkt. 76 at 6 n.1.

Flare Gas Management Ecosystem," implying such operations are part of Alkane's suite of flare gas mitigation services. *Id.* (slide 6) (emphasis added). Not to mention, Alkane's website states: "We offer our customers the most comprehensive power and natural gas solution sets in the basins we serve, ***without the need for third parties***." Dkt. 9-10 (emphasis added).

Alkane similarly eschews Crusoe's reliance on the Google Maps photograph depicting an Alkane wellsite and—more specifically—flare-gas mitigation equipment that is strikingly similar to Crusoe's own patented Digital Flare Mitigation® system. But, unlike the "Water Recycling" equipment referenced above, the mobile data centers captured in the Google Maps photograph are completely devoid of external markings. Dkt. 1-6 at Exs. B-C; Dkt. 27-09 at Exs. B-C; *cf.* Dkt. 9 at Ex. R. Thus, Crusoe had no reason to believe that the equipment ***photographed on an Alkane wellsite*** belonged to or was operated by a third party.

Indeed, the ***only*** particular fact[2] Alkane points to in support of its argument that "Crusoe knew or at the very least should have suspected that Alkane merely generated electricity and sold it to third parties" is that "Alkane attempted to negotiate a solution with Crusoe in which Crusoe would use fuel gas processed and provided by Alkane to perform cryptocurrency mining at the Colorado Producer's well pad" after the July 22, 2022 meeting. Dkt. 85 at 6-7 (quoting Dkt. 74 at ¶ 53). However, the more obvious interpretation of Alkane's offer to negotiate a resolution with Crusoe is that Alkane wanted to avoid a dispute over its interference with Crusoe's ***preexisting*** contract with Gondola/Modiin. In the context of imminent litigation, it would require several

---

[2] Alkane also generally alludes to "Crusoe's industry knowledge and participation in industry forums and events[,]" but it fails to explain how this supports its assertion that Crusoe would have "at least suspected Alkane merely generated electricity and sold it to third-parties that owned and operated distributed computing systems." Dkt. 85 at 7 (citing Dkt. 74 at ¶¶ 60-61).

inferential leaps for Crusoe to arrive at the conclusion that Alkane's attempt to negotiate a resolution was obvious evidence of Alkane's exclusive business model—*i.e.*, that it only generates electricity to sell to third parties, who may use it to perform distributed computing operations. Further, if Alkane never itself used the electricity it generated to operate distributed computing systems, why would Gondola/Modiin have altogether canceled their contract with Crusoe in the first place, knowing it could be a year or longer before Alkane was able to procure the necessary equipment to convert natural gas to natural gas liquid ("NGL")?  *See* Dkt. 1 at ¶¶ 45-47; Dkt. 27 at ¶¶ 46-48; Dkt. 69 at ¶¶ 47-49.  It was reasonable for Crusoe to assume Alkane's flare gas mitigation services would be a complete and identical replacement to Crusoe's services based on Gondola/Modiin's termination of the Crusoe contract.

Finally, it is notable that Alkane appears to charge Crusoe with pre-suit knowledge of statements it made *after* this litigation began.  For example, Alkane cites the following allegation from its Counterclaims in support of its Response:  "While there have been data centers (i.e., distributed computing systems) present at a handful of the Alkane well sites, Alkane did not own or operate these data centers."  Dkt. 85 at 4 (quoting  Dkt. 74 at ¶ 57).  This allegation seems to be derived directly from the Declaration of Ryan Blazei, filed in support of Alkane's Response to Crusoe's Motion for TRO.  *See* Dkt. 37 at ¶ 17 ("Alkane does not supply, own, or operate data centers at any of the wellsites where it provides its services.  Nor does Alkane have any interest in supplying, owning, or operating data centers at any of the wellsites.").  Thus, assuming the allegation to be true, Alkane improperly presupposes Crusoe had knowledge of statements Alkane's CEO made *after* this litigation began **before or at the time of filing** its Original Complaint and Motion for a TRO.  And as discussed in Crusoe's Motion to Dismiss, Crusoe still

has reason to doubt the truth of Mr. Blazei's cited statement in light of his conflicting testimony in concurrent litigation.[3]  *See* Dkt. 76 at 7.

In sum, Alkane fails to raise a compelling argument that Crusoe knew Alkane did not own or operate a distributed computing system, and thereby that its infringement allegations are "objectively baseless."

> **B. Crusoe Had Probable Cause to Believe Alkane's Accused Products Had the Requisite Electrical Transformation Module.**

In addition, the fact that Alkane believes its Accused Products fail to meet the claim limitations of the Asserted Patents is no evidence Crusoe's infringement allegations are "objectively baseless."  *See, e.g.,* Dkt. 85 at 5 ("Because Alkane does not use an electrical transformation module, or an equivalent thereof, to transform electricity from one voltage to a lower voltage, Alkane does not infringe any of the patent claims asserted by Crusoe.").

Alkane's argument in this regard centers on its assertion that Crusoe would have recognized the Accused Products lack the requisite electrical transformation module had it performed a reasonable pre-suit investigation.  *See* Dkt. 85 at 7-8.  Alkane specifically relies on the Federal Circuit's decision in *Judin v. U.S.,* 110 F.3d 780, 784 (Fed. Cir. 1997) (holding Rule 11 sanctions were appropriate where neither the plaintiff nor his counsel offered an "adequate explanation . . . for why they failed to obtain, or attempted to obtain, a sample of the accused device

---

[3] For similar reasons, Crusoe disagrees with Alkane's assertion that Crusoe should have withdrawn its Motion for TRO at an earlier point because it was "***indisputably*** put on notice that Alkane did not own any distributed computing systems and did not use the requisite electrical transformation module[.]"  Dkt. 85 at 9 (emphasis added).  Further, Crusoe disagrees with Alkane's characterization of its withdrawal of its Motion for TRO—*i.e.,* that it was "based exclusively on successfully usurping the opportunity to provide flare mitigation services at the Colorado Well Pad from Alkane."  *Id.*  Notwithstanding the fact that Crusoe cannot, by definition, "usurp" a contractual right that belonged to it in the first instance, Crusoe properly withdrew its Motion for TRO only after the legal basis for injunctive relief was no longer present:  the likelihood of "imminent irreparable harm" resulting from Alkane's sale of infringing products to Gondola/Modiin.  *See* Dkt. 76 at 8-9.

from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent."). This case is distinguishable.

Unlike the product at issue in *Judin*, the Accused Products are not readily movable or observable objects Crusoe could have purchased or requested a sample from Alkane to inspect. Rather, Crusoe would have had to enter onto private property in order to inspect the Accused Products. Further, following its decision in *Judin*, the Federal Circuit clarified "that the key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis." *Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1302 (Fed. Cir. 2004) (citing *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000) (finding Rule 11 sanctions appropriate where the patentee relied on the accused infringer's advertising statements alone and ***did not perform any claim construction analysis or an infringement analysis prior to filing its infringement claim***)). As evidenced by its thorough claim charts and retention of a qualified expert to prepare the same, Crusoe performed a ***detailed*** claim construction and infringement analysis before filing the present suit. *See* Dkt. 1-6 at Exs. C-D; Dkt. 9-15 at Exs. C-D.

It remains to be seen whether Alkane's argument that the Accused Products lack the requisite electrical transformation module is relevant to whether it is ***actually*** infringing or has infringed the Asserted Patents. However, assuming this fact supports Alkane's noninfringement argument, it is no evidence that Crusoe lacked probable cause to institute this litigation. *See BE & K,* 536 U.S. at 532 ("the genuineness of a grievance does not turn on whether it succeeds").

### III. Alkane Fails to Meet Its Burden to Demonstrate Crusoe Had the Requisite Subjective Intent.

It bears repeating that the "sham litigation" inquiry should only proceed to examining Crusoe's subjective intent if the Court determines Crusoe's patent infringement allegations are "objectively baseless." *Prof'l Real Estate,* 508 U.S. at 57, 60 ("[A]n objectively reasonable effort to litigate cannot be sham regardless of intent."). Nevertheless, Alkane fails to raise a persuasive argument that Crusoe has acted with the requisite subjective intent.

Alkane argues it is evident Crusoe subjectively intends to harm Alkane through abuse of a governmental process both because (1) Crusoe has selectively enforced its intellectual property rights against Alkane, despite having limited knowledge of other entities in the market that may also be infringing, Dkt. 85 at 10; and (2) Crusoe is "us[ing] its enormous advantage in size and capital to either force Alkane out of business or force Alkane to concede to a one-sided settlement in order to alleviate litigation expenses." Dkt. 85 at 11 (quoting Dkt. 74 at ¶ 87); *see also Content Extraction & Transmission LLC v. Wells Fargo,* 776 F.3d 1343, 1350 (Fed. Cir. 2014) (plaintiff must show "not only that the litigation was objectively baseless, but also that the defendant subjectively intended to harm the plaintiff through the abuse of a governmental process itself, as opposed to harms flowing from the outcome of that process").

Of course, Crusoe's enforcement of its intellectual property rights against Alkane is neither "selective" (or arbitrary), nor is it motivated by a desire to force Alkane out of business. Unlike the other entities Alkane identifies in its Counterclaims, *see* Dkt. 74 at ¶ 59, Crusoe has suffered significant damages as a result of Alkane's infringing and tortious acts. And while Alkane attempts to ironically paint Crusoe as the "jilted suitor" in this dispute, Dkt. 85 at 9, Crusoe and Gondola/Modiin ***already had an existing contract*** before Alkane interfered with it. As Crusoe

-9-

has disclosed to Alkane in the course of expedited discovery relevant to Crusoe's Motion for TRO, Crusoe has documented damages in the millions resulting from Alkane's infringement of Crusoe's intellectual property and tortious interference with Crusoe's contractual rights. As discussed in Crusoe's Motion to Dismiss, Crusoe has an overwhelming interest in protecting its intellectual property rights and recovering its substantial damages resulting from Alkane's infringement of the Asserted Patents and tortious interference with Crusoe's contract with Gondola/Modiin. *See* Dkt. 76 at 11.

In sum, even assuming the Court finds it appropriate to reach the second prong of the "sham litigation" inquiry, Alkane fails to raise a compelling argument that Crusoe possesses the requisite subjective intent.

### IV.   CONCLUSION

For the foregoing reasons, the Court should grant Crusoe's Motion to Dismiss Alkane's Counterclaims Five and Six (Dkt. 76) because Alkane has not demonstrated the "sham litigation" exception to Petition Clause immunity applies.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: January 18, 2023 | **NORTON ROSE FULBRIGHT US LLP** |

*/s/ Brett C. Govett*
Brett C. Govett
brett.govett@nortonrosefulbright.com
Taylor Shields
taylor.shields@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone:     (214) 855-8120
Facsimile:      (214) 855-8200

Stephanie DeBrow
stephanie.debrow@nortonrosefulbright.com
Daniel Shuminer
Colorado State Bar No. 53994
daniel.shumniner@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone:     (512) 563-3094
Facsimile:      (512) 536-4598

*Attorneys for Plaintiff Crusoe Energy Systems LLC*

-12-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 18, 2023 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

/s/ *Brett C. Govett*
Brett C. Govett

## CERTIFICATE OF COMPLIANCE

Pursuant to D.C.COLO.LPtR 17, the undersigned hereby certifies that the above document contains 3,040 words, excluding the Table of Contents, Table of Authorities, and signature block. Together, Crusoe's Motion to Dismiss (Dkt. 76) and this reply in support of the same contain 6,590 words.

/s/ *Brett C. Govett*
Brett C. Govett